# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| TOMMIE AUSTIN, PAULSEN BRONSTON, PATRICIA BROOKS, STEPHEN CALDER, NATHANIEL CANTUE, SAMUEL COHN, LORENZO DAVALOS, MARQUITA DAVIS, THOMAS DAW, JAMES DUNMIRE, CRYSTAL GALLOWAY, ESMERALDA GONZALEZ, TEDURA HANNIBAL, LAKISHA HARRIS, MICHELLE HENDRICKS, DAVID JOHNSON, GWENDOLYN LANCASTER, PHILLIPA MENZIES, SHARON MOORE, APRIL OSIBAJO, RICK PINKHAM, CHERYL ROONEY, WENDY SCALIA, EVON SERRANO, LINDA SINEGAL, KATHY STILLWELL, CYNTHIA TAYLOR, BRENDA WATSON, IRIS WILLIAMS, and DAPHNE WITTY, | Case No. 1:24-cv-1711 **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| NOVO NORDISK, INC., NOVO NORDISK US COMMERICAL HOLDINGS INC.; NOVO NORDISK A/S; NOVO NORDISK NORTH AMERICA OPERATIONS A/S; NOVO NORDISK RESEARCH CENTER SEATTLE, INC.; NOVO NORDISK US HOLDINGS, INC; and NOVO NORDISK PHARMACEUTRIAL INDUSTRIES LP, | |
| Defendants. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Tommie Austin, Paulsen Bronston, Patricia Brooks, Stephen Calder, Nathaniel

Cantue, Sameul Cohn, Lorenzo Davalos, Marquita Davis, Thomas Daw, James Dunmire, Crystal

Galloway, Esmeralda Gonzalez, Tedura Hannibal, Lakisha Harris, Michelle Hendricks, David

Johnson, Gwendolyn Lancaster, Phillipa Menzies, Sharon Moore, April Osibajo, Rick Pinkham,

Cheryl Rooney, Wendy Scalia, Evon Serrano, Linda Sinegal, Kathy Stillwell, Cynthia Taylor,

Brenda Watson, Iris Williams, and Daphne Witty by and through undersigned attorneys, hereby

bring this cause of action and allege as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because

the amount in controversy as to Plaintiff exceeds $75,000.00, exclusive of interest and costs,

and because Defendants are incorporated and have their principal place of business in states

other than the state in which the named Plaintiffs reside, which is Alabama, Arizona,

California, Georgia, Illinois, Indiana, Kansas, Massachusetts, Michigan, Mississippi, North

Carolina, New Mexico, Oklahoma, Pennsylvania, South Carolina, Texas, Wisconsin, and

West Virginia.

2.      This Court has personal jurisdiction over Defendants, consistent with the United

States Constitution and 735 Ill. Comp. Stat. Ann. 5/2-209 (Illinois' "long arm" statute), as

Plaintiff's claims arise out of Defendants' transaction of business and the tortious acts within

the State of Illinois, and by virtue of Defendants' substantial, continuous, and systematic

contacts with the State of Illinois unrelated to Plaintiff's claims. Defendants are also

organized under the laws of the State of Illinois and maintain a registered agent in the state.

3.      Venue is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the

events or omissions giving rise to the claim occurred, or a substantial part of property that is

the subject of the action is situated in this district.

## NATURE OF THE CASE

4.      It has been determined that the case in question will be transferred into Multidistrict Litigation already in place in the Eastern District of Pennsylvania. However, it is important to note that the MDL case is not currently accepting filings. While the transfer acknowledges the compexixities and similarities of the cases involved, it is essential for all parties to await further instructions regarding the commencement of filings within the MDL proceedings.

5.      This is an action for damages suffered by Plaintiffs,  Tommie Austin, Paulsen Bronston, Patricia Brooks, Stephen Calder, Nathaniel Cantue, Sameul Cohn, Lorenzo Davalos, Marquita Davis, Thomas Daw, James Dunmire, Crystal Galloway, Esmeralda Gonzalez, Tedura Hannibal, Lakisha Harris, Michelle Hendricks, David Johnson, Gwendolyn Lancaster, Phillipa Menzies, Sharon Moore, April Osibajo, Rick Pinkham, Cheryl Rooney, Wendy Scalia, Evon Serrano, Linda Sinegal, Kathy Stillwell, Cynthia Taylor, Brenda Watson, Iris Williams, and Daphne Witty, who were severely injured as a result of Plaintiffs' use of Ozempic and Ryblesus, injectable prescription medications that are used to control blood sugar in patients with type 2 diabetes.

6.      Ozempic and Ryblesus are also known as semaglutide. Semaglutide works by stimulating insulin production and reducing glucose production in the liver helping to lower blood sugar levels.

7.      Ozempic and Ryblesus belong to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

8.     Defendants acknowledge that gastrointestinal events are well known side effects of the GLP-1RA class of drugs.[1] However, Defendants have downplayed the severity of the gastrointestinal events caused by their GLP-1RAs, never, for example, warning of the risk of gastroparesis ("paralyzed stomach"), gallbladder removal surgery, and associated complications.

9.     Gastroparesis is a condition that affects normal muscle movement in the stomach. Ordinarily, strong muscular contractions propel food through the digestive tract. However, in a person suffering from gastroparesis, the stomach's motility is slowed down or does not work at all, preventing the stomach from emptying properly. Gastroparesis can interfere with normal digestion and cause nausea, vomiting (including vomiting of undigested food), abdominal pain, abdominal bloating, severe dehydration, a feeling of fullness after eating just a few bites, undigested food hardening and remaining in the stomach, acid reflux, changes in blood sugar levels, lack of appetite, weight loss, malnutrition, and a decreased quality of life. There is no cure for gastroparesis.[2]

10.     Gastroenteritis refers to inflammation of the stomach and intestines. While viral gastroenteritis is also known as stomach flu, gastroenteritis may also be caused by ingesting medications.[3] Its symptoms include vomiting, nausea, diarrhea, stomach cramps, muscle

---

[1] *See, e.g.,* CT Jones, *Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*, Rolling Stone (July 25, 2023), https://www.rollingstone.com/culture/culture-news/ozempic-stomach-paralysis-weight-loss-side-effects-1234794601 (last visited on Jan. 30, 2024).

[2] Gastroparesis, Mayo Clinic (June 11, 2022), https://www.mayoclinic.org/diseases-conditions/gastroparesis/symptoms-causes/syc-20355787 (last visited on Jan. 30, 2024).
[3] Drug-Related Gastroenteritis and Chemical-Related Gastroenteritis (June 2023), https://www.merckmanuals.com/home/digestive-disorders/gastroenteritis/drug-related-gastroenteritis-and-chemical-related-gastroenteritis (last visited on Feb. 28, 2024).

aches, headaches, and fever.[4] Notably, vomiting and diarrhea can cause dehydration, which is the main complication of gastroenteritis, and which can lead to death.[5]

11.     A cholecystectomy is a surgery to remove the gallbladder. The gallbladder is a pear-shaped organ that sits just below the liver on the upper right side of the abdomen. The gallbladder collects and stores a digestive fluid made in the liver called bile.[6]

12.     Long term side effects of gall bladder removal include food intolerance, nausea, vomiting, heartburn, flatulence, indigestion, diarrhea, jaundice, and severe abdominal pain. These symptoms can present early, typically in the post-operative period, but can also manifest months to years after surgery.

## **PLAINTIFFS**

13.     Plaintiff, Tommie Austin, is a citizen of the United States, and is a resident of Mississippi. Plaintiff was born on October 4, 1965. Plaintiff began taking Ozempic approximately in 2020. Plaintiff's physician(s) ("prescribing physician(s)") prescribed Ozempic that was used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by  Ozempic.

14.     Plaintiff, Paulsen Bronston, is a citizen of the United States, and is a resident of Arizona. Plaintiff was born on October 26, 1961. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the

---

[4] Viral Gastroenteritis, https://www.mayoclinic.org/diseases-conditions/viral-gastroenteritis/symptoms-causes/syc-20378847 (last visited on Feb. 28, 2024).
[5] *Id*.
[6]  Cholecystectomy, https://www.mayoclinic.org/tests-procedures/cholecystectomy/about/pac-20384818 (last visited on Feb. 28, 2024).

Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

15.     Plaintiff, Patricia Brooks, is a citizen of the United States, and is a resident of North Carolina. Plaintiff was born on October 21, 1978. Plaintiff began taking Ozempic in approximately 2023. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

16.     Plaintiff, Stephen Calder, is a citizen of the United States, and is a resident of North Carolina. Plaintiff was born on June 11, 1971. Plaintiff began taking Ozempic in approximately January 2019. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

17.     Plaintiff, Nathaniel Cantue, is a citizen of the United States, and is a resident of Texas. Plaintiff was born on August 27, 1967. Plaintiff began taking Ozempic in approximately 2020. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained

severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

18.     Plaintiff, Sameul Cohn, is a citizen of the United States, and is a resident of Georgia. Plaintiff was born on December 5, 1967. Plaintiff began taking Ozempic in approximately 2019. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

19.     Plaintiff, Lorenzo Davalos, is a citizen of the United States, and is a resident of Texas. Plaintiff was born on June 4, 1953. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

20.     Plaintiff, Marquita Davis, is a citizen of the United States, and is a resident of Illinois. Plaintiff was born on July 26, 1981. Plaintiff began taking Rybelsus in approximately 2020. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Rybelsus that were used by Plaintiff.  As a result of using Rybelsus, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Rybelsus.

21.     Plaintiff, Thomas Daw, is a citizen of the United States, and is a resident of Alabama. Plaintiff was born on December 23, 1967. Plaintiff began taking Ozempic in approximately 2019. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

22.     Plaintiff, James Dunmire, is a citizen of the United States, and is a resident of Pennsylvania. Plaintiff was born on December 26, 1963. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

23.     Plaintiff, Crystal Galloway, is a citizen of the United States, and is a resident of West Virgina. Plaintiff was born on October 18, 1965. Plaintiff began taking Ozempic in approximately 2019. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

24.     Plaintiff, Esmeralda Gonzalez, is a citizen of the United States, and is a resident of Texas. Plaintiff was born on November 12, 1991. Plaintiff began taking Ozempic in

approximately 2021. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

25.     Plaintiff, Tedura Hannibal, is a citizen of the United States, and is a resident of South Carolina. Plaintiff was born on April 15, 1973. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

26.     Plaintiff, Lakisha Harris, is a citizen of the United States, and is a resident of Alabama. Plaintiff was born on December 1, 1974. Plaintiff began taking Ozempic in approximately 2021. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

27.     Plaintiff, Michelle Hendricks, is a citizen of the United States, and is a resident of Arizona. Plaintiff was born on July 14, 1970. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to

suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

28.     Plaintiff, David Johnson, is a citizen of the United States, and is a resident of Illinois. Plaintiff was born on September 23, 1961. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

29.     Plaintiff, Gwendolyn Lancaster, is a citizen of the United States, and is a resident of North Carolina. Plaintiff was born on September 29, 1958. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

30.     Plaintiff, Phillipa Menzies, is a citizen of the United States, and is a resident of California. Plaintiff was born on December 24, 1950. Plaintiff began taking Ozempic in approximately 2021. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained

severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

31.     Plaintiff, Sharon Moore, is a citizen of the United States, and is a resident of Oklahoma. Plaintiff was born on August 24, 1960. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

32.     Plaintiff, April Osibajo, is a citizen of the United States, and is a resident of Michigan. Plaintiff was born on February 7, 1971. Plaintiff began taking Ozempic in approximately 2020. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

33.     Plaintiff, Rick Pinkham, is a citizen of the United States, and is a resident of South Carolina. Plaintiff was born on December 23, 1954. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

34.     Plaintiff, Cheryl Rooney, is a citizen of the United States, and is a resident of Massachusetts. Plaintiff was born on October 26, 1948. Plaintiff began taking Ozempic in approximately March of 2020. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

35.     Plaintiff, Wendy Scalia, is a citizen of the United States, and is a resident of Wisconsin. Plaintiff was born on January 21, 1973. Plaintiff began taking Rybelsus in approximately 2019. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Rybelsus that were used by Plaintiff.  As a result of using Rybelsus, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Rybelsus.

36.     Plaintiff, Evon Serrano, is a citizen of the United States, and is a resident of New Mexico. Plaintiff was born on June 29, 1962. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

37.     Plaintiff, Linda Sinegal, is a citizen of the United States, and is a resident of Texas. Plaintiff was born on March 26, 1963. Plaintiff began taking Ozempic in

approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

38.     Plaintiff, Kathy Stillwell, is a citizen of the United States, and is a resident of Georgia. Plaintiff was born on September 25, 1972. Plaintiff began taking Ozempic in approximately May 2019. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

39.     Plaintiff, Cynthia Taylor, is a citizen of the United States, and is a resident of Kansas. Plaintiff was born on September 15, 1963. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

40.     Plaintiff, Brenda Watson, is a citizen of the United States, and is a resident of Mississippi. Plaintiff was born on June 11, 1967. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff.  As a result of using Ozempic, Plaintiff was caused to

suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

41. Plaintiff, Iris Williams, is a citizen of the United States, and is a resident of North Carolina. Plaintiff was born on November 26, 1963. Plaintiff began taking Ozempic in approximately 2021. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff. As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

42. Plaintiff, Daphne Witty, is a citizen of the United States, and is a resident of Indiana. Plaintiff was born on November 2, 1970. Plaintiff began taking Ozempic in approximately 2018. Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that were used by Plaintiff. As a result of using Ozempic, Plaintiff was caused to suffer from severe gastrointestinal events and digestive events, and as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses. Plaintiff's injuries were caused by Ozempic.

## **DEFENDANTS**

43. Defendant Novo Nordisk Inc. is a Delaware corporation with a principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey.

44. Defendant Novo Nordisk Inc. is wholly owned by Defendant Novo Nordisk US Commercial Holdings, Inc.

45.     Defendant Novo Nordisk US Commercial Holdings Inc. is a Delaware corporation with a principal place of business at 103 Foulk Road, Wilmington, Delaware. Defendant Novo Nordisk US Holdings Inc. is wholly owned by Defendant Novo Nordisk A/S.

46.     Defendant Novo Nordisk A/S is a public limited liability company organized under the laws of Denmark with a principal place of business at Novo Allé, DK-2880, Bagsværd, Denmark.

47.     Defendant Novo Nordisk North America Operations A/S is a company organized under the laws of Denmark with a principal place of business in Novo Allé, DK-2880 Bagsværd, Denmark.

48.     Defendant Novo Nordisk Research Center Seattle, Inc. is a Delaware corporation with a principal place of business at 530 Fairview Ave., N., Seattle, Washington.

49.     Defendant Novo Nordisk Pharmaceutical Industries LP is a Delaware corporation with a principal place of business at 3611 and 3612 Powhatan Road, Clayton, North Carolina.

50.     Defendant Novo Nordisk Pharmaceutical Industries LP is the labeler for Ozempic, and Defendants Novo Nordisk A/S and Novo Nordisk Inc. are also identified on Ozempic's label.[7]

51.     Defendants Novo Nordisk Inc., Novo Nordisk US Commercial Holdings Inc., Novo Nordisk US Holdings Inc., Novo Nordisk A/S, Novo Nordisk North America Operations A/S, Novo Nordisk Research Center Seattle, Inc., and Novo Nordisk Pharmaceutical Industries LP are referred to collectively herein as "Novo Nordisk." Novo Nordisk designed, researched, manufactured, tested, advertised, promoted, marketed, sold,

---

[7] Ozempic prescribing information, https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=adec4fd2-6858-4c99-91d4-531f5f2a2d79 (last visited on Jan. 30, 2024).

and/or distributed Ozempic and Rybelsus. Alternatively, Novo Nordisk has acquired the entity/entities who designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Rybelsus, and is, thus, the successor to such entity/entities.

## **FACTUAL BACKGROUND**

### A.    **FDA's Approval of Ozempic**

52.     On December 5, 2016, Novo Nordisk announced submission of a new drug application (NDA) to the FDA for regulatory approval of once-weekly injectable semaglutide, a new glucagon-like peptide-1 (GLP-1) medication for treatment of type 2 diabetes. In the announcement Novo Nordisk represented that in clinical trials "once-weekly semaglutide had a safe and well tolerated profile with the most common adverse event being nausea."[8]

53.     On December 5, 2016, Defendant Novo Nordisk Inc. submitted NDA 209637, requesting that the FDA grant it approval to market and sell Ozempic (semaglutide) 0.5 mg or 1 mg injection in the United States as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus. On December 5, 2017, the FDA approved NDA 209637.[9]

54.     On March 20, 2019, Defendant Novo Nordisk Inc. submitted supplemental new drug application (sNDA) 209637/S-003 for Ozempic (semaglutide) 0.5 mg or 1 mg injection, requesting approval to expand its marketing of Ozempic by adding an indication to reduce

---

[8] Novo Nordisk, *Novo Nordisk files for regulatory approval of once-weekly semaglutide in the US and EU for the treatment of type 2 diabetes* (Dec. 5, 2016), https://ml.globenewswire.com/Resource/Download/d2f719e1-d69f-4918-ae7e-48fc6b731183 (last visited on Jan. 30, 2024).
[9] FDA Approval Letter for NDA 209637 (Ozempic), https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2017/209637s000ltr.pdf (last visited Jan. 30, 2024).

the risk of major adverse cardiovascular events in adults with type 2 diabetes and established cardiovascular disease.[10] On January 16, 2020, the FDA approved sNDA 209637/S-003.[11]

55.     On May 28, 2021, Defendant Novo Nordisk Inc. submitted sNDA 209637/S-009, requesting approval for a higher 2 mg dose of Ozempic (semaglutide) injection. On March 28, 2022, the FDA approved sNDA 209637/S-009.[12]

**B.      FDA's Approval of Rybelsus**

56.     On March 20, 2019, the Novo Nordisk Defendants announced the submission of a new drug application (NDA) to the FDA for regulatory approval for oral semaglutide, under the brand name Rybelsus, the first once-daily glucagon-like peptide-1 receptor agonist for blood sugar control and cardiovascular risk reduction in adults with type 2 diabetes.[13]

57.     On March 20, 2019, Defendant Novo Nordisk Inc. submitted NDA 213051, requesting that the FDA grant it approval to market and sell Rybelsus (oral semaglutide) in both 7 mg and 14 mg oral doses in the United States as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.[14] On September 20, 2019, the FDA approved NDA 213051.[15]

---

[10] PR Newswire, *Novo Nordisk files for US FDA approval of oral semaglutide for blood sugar control and cardiovascular risk reduction in adults with type 2 diabetes* (Mar. 20, 2019), https://www.prnewswire.com/news-releases/novo-nordisk-files-for-us-fda-approval-of-oral-semaglutide-for-blood-sugar-control-and-cardiovascular-risk-reduction-in-adults-with-type-2-diabetes-300815668.html (last visited on Jan. 30, 2024).
[11] FDA Supplement Approval Letter for NDA 209637/S-003 (Ozempic), https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2020/209637Orig1s003ltr.pdf (last visited Jan. 30, 2024).
[12] FDA Supplement Approval Letter for NDA 209637/S-009 (Ozempic), https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/209637Orig1s009ltr.pdf (last visited Jan. 20, 2024).
[13] *Novo Nordisk files for US FDA approval of oral semaglutide for blood sugar control and cardiovascular risk reduction in adults with type 2 diabetes*, PR Newswire (Mar. 20, 2019), https://www.prnewswire.com/news-releases/novo-nordisk-files-for-us-fda-approval-of-oral-semaglutide-for-blood-sugar-control-and-cardiovascular-risk-reduction-in-adults-with-type-2-diabetes-300815668.html. (last visited on Feb. 29, 2024).
[14] Clinical Review for NDA 21051 (Rybelsus), https://www.accessdata.fda.gov/drugsatfda_docs/nda/2019/213051Orig1s000MedR.pdf. (last visited on Feb. 29, 2024).
[15] FDA Letter for NDA 213051 (Rybelsus), https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2019/213051Orig1s000ltr.pdf. (last visited on Feb. 29, 2024).

58.     On December 10, 2019, Defendant Novo Nordisk Inc. submitted a supplemental new drug application (NDA 213051/S-001) for Rybelsus (semaglutide) asking "for the addition of efficacy and safety information to the prescribing information based on clinical data from the PIONEER 6 cardiovascular outcomes trial entitled, 'A trial investigating the cardiovascular safety of oral semaglutide in subjects with type 2 diabetes.'"[16] On January 16, 2020, the FDA approved NDA 213051/S-001.[17]

59.     On March 28, 2022, the FDA notified Defendant Novo Nordisk, Inc. of new safety information that it determined should be included in the labeling for GLP-1RA products pertaining to the risk of acute gallbladder disease. On April 27, 2022, Defendant Novo Nordisk, Inc. submitted a supplemental new drug application (NDA 213051/S-011) and amendments for Rybelsus (semaglutide) tablets incorporating the FDA's required safety modifications to the label. On June 10, 2022, the FDA provided supplemental approval for NDA 213051/S-011.[18]

60.     On July 15, 2022, Defendant Novo Nordisk Inc. submitted a supplemental new drug application (NDA 123051/S-012) for Rybelsus to remove the "Limitation of Use" statement "Not recommended as first-line therapy for patients inadequately controlled on diet and exercise" in the "Prescribing Information and Medication Guide" ("PI"). The following updates were also made to the PI information: a) addition of Pancreatitis and Diabetic Retinopathy Complications to the Other Adverse Reactions subsection in section 6.1, Clinical

---

[16] FDA Approval Letter, https://www.accessdata.fda.gov/drugsatfda_docs/nda/2020/213182Orig1s000Approv.pdf. (last visited on Feb. 29, 2024).
[17] Approval Package for NDA 213051/S-001 (Rybelsus), https://www.accessdata.fda.gov/drugsatfda_docs/nda/2020/213182Orig1s000Approv.pdf. (last visited on Feb. 29, 2024).
[18] FDA Approval Letter for NDA 1230/S-011 (Rybelsus), https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/213051Orig1s011ltr.pdf. (last visited on Feb. 28, 2024).

Trials Experience; b) updating the Immunogenicity section and moving it from section 6.2 to section 12.6; c) adding "Gastrointestinal: ileus" to section 6.2, Postmarketing Experience; d) revising section 7.1, Concomitant Use with an Insulin Secretagogue (e.g., Sulfonylurea) or with insulin; and e) other minor grammatical changes. The FDA approved NDA 123051/S-012 on January 12, 2023.[19]

61.     On January 12, 2023, the Novo Nordisk Defendants announced the FDA's approval of NDA 123051/S-012 for the label update described above. In the press release, the Novo Nordisk Defendants emphasized that "Rybelsus has been prescribed to hundreds of thousands of patients to help improve glycemic control[,]" and they disclosed Important Safety Information about Rybelsus and provided links to its Medication Guide and Prescribing Information, but gastroparesis was not identified as a side effect or risk.[20]

**C.    Novo Nordisk's Marketing and Promotion of Ozempic**

62.     On December 5, 2017, Novo Nordisk announced the FDA's approval of Ozempic (semaglutide) 0.5 mg or 1 mg injection in a press release stating that: "Novo Nordisk expects to launch OZEMPIC® in the U.S. in Ql 2018, with a goal of ensuring broad insurance coverage and patient access to the product. OZEMPIC® will be priced at parity with current market-leading weekly GLP-lRAs and will be offered with a savings card program to reduce co-pays for eligible commercially insured patients. Additionally, as part of the access

---

[19] *Novo Nordisk announces FDA approval of label update for Rybelsus (semaglutide) allowing use as a first-line option for adults with type 2 diabetes*, PR Newswire (Jan. 12, 2023), https://www.prnewswire.com/news-releases/novo-nordisk-announces-fda-approval-of-label-update-for-rybelsus-semaglutide-allowing-use-as-a-first-line-option-for-adults-with-type-2-diabetes-301720965.html. (last visited on Feb. 29, 2024).
[20] *Novo Nordisk announces FDA approval of label update for Rybelsus (semaglutide) allowing use as a first-line option for adults with type 2 diabetes*, Novo Nordisk (Jan. 12, 2023), https://www.novonordisk-us.com/media/news-archive/news-details.html?id=154651. (last visited on Feb. 29, 2024).

strategy, Novo Nordisk is working with appropriate health insurance providers to establish

innovative contracting solutions.[21]

63.     On February 5, 2018, Novo Nordisk announced that it had started selling

Ozempic in the United States and touted the medication as a "new treatment option[]" that

"addresses the concerns and needs of people with diabetes[.]" Novo Nordisk offered an

"Instant Savings Card to reduce co-pays to as low as $25 per prescription fill for up to two

years."[22]

64.     Novo Nordisk promoted the safety and sale of Ozempic in the United States on its

websites, in press releases, through in-person presentations, through the drug's label, in print

materials, on social media, and through other public outlets.

65.     On July 30, 2018, Novo Nordisk launched its first television ad for Ozempic, to

the tune of the 1970s hit pop song "Magic" by Pilot, wherein Novo Nordisk advertised that

"adults lost on average up to 12 pounds" when taking Ozempic, even though it is not

indicated for weight loss.[23]

66.     On March 28, 2022, Novo Nordisk announced the FDA's approval of sNDA

209637/S-009 for a higher 2 mg dose of Ozempic (semaglutide) injection. In the press

release, Novo Nordisk represented Ozempic as having "proven safety" and advertised that

"plus it can help many patients lose some weight."[24]

---

[21] *Novo Nordisk Receives FDA Approval of OZEMPIC® (semaglutide) Injection For the Treatment of Adults with Type 2 Diabetes*, Cision PR Newswire (December 05, 2017), https://www.prnewswire.com/news-releases/novo-nordisk-receives-fda-approval-of-ozempic-semaglutide-injection-for-the-treatment-of-adults-with-type-2-diabetes-300567052.html (last visited on Feb. 1, 2024).
[22] *Novo Nordisk Launches Ozempic® and Fiasp®, Expanding Treatment Options for Adults with Diabetes*, Cision PR Newswire (February 05, 2018), https://www.prnewswire.com/news-releases/novo-nordisk-launches-ozempic-and-fiasp-expanding-treatment-options-for-adults-with-diabetes-300592808.html (last visited on Feb. 1, 2024).
[23] *Ozempic TVSpot*, 'Oh!', iSpot.tv (July 30, 2018), https://www.ispot.tv/ad/d6Xz/ozempic-oh (visited on Feb. 1, 2024).
[24] *Novo Nordisk receives FDA approval of higher-dose Ozempic® 2 mg providing increased glycemic control for*

67.     Since 2018, Novo Nordisk has spent more than $884,000,000 on television ads in the United States to promote its semaglutide drugs (Ozempic, Wegovy and Rybelsus) with the majority of the spending allocated specifically to advertising Ozempic.[25]

68.     In 2022, Novo Nordisk spent $180.2 million on Ozempic ads, including an estimated $157 million on national television ads for Ozempic, making Ozempic the sixth most advertised drug that year. As a result of its GLP-1RA treatments, including Ozempic, Novo Nordisk forecasts sales growth of 13% to 19% for 2023.[26]

69.     On July 6, 2023, it was reported that Novo Nordisk had spent $11 million in 2022 on food and travel for doctors "as part of its push to promote Ozempic and other weight loss-inducing diabetes drugs."[27] The spending bought more than 457,000 meals for almost 12,000 doctors while also flying doctors to places like London, Paris, Orlando, and Honolulu.[28]

70.     In an article published on July 21, 2023, the President and CEO of the Alliance of Community Health Plans described Novo Nordisk's spending on meals for doctors as "outrageous" and suggested that the millions Novo Nordisk spent marketing its drugs to prescribers would be better used furthering research about potential side effects and long-term effectiveness. The author cited research published in the spring of 2023 showing an increased risk of intestinal obstruction as a result of using GLP-1RA drugs.[29]

*adults with type 2 diabetes*, Cision PR Newswire (March 28, 2022), https://www.prnewswire.com/news-releases/novo-nordisk-receives-fda-approval-of-higher-dose-ozempic-2-mg-providing-increased-glycemic-control-for-adults-with-type-2-diabetes-301512209.html (last visited on Feb. 1, 2024).

[25] Ritzau, *Novo Nordisk runs TV ads in US for multimillion-dollar sum*, MedWatch (April 26, 2023), https://medwatch.com/News/Pharma___Biotech/article15680727.ece (last visited on Feb. 1, 2024).

[26] Ben Adams, *The top 10 pharma drug ad spenders for 2022*, Fierce Pharma (May 1, 2023), https://www.fiercepharma.com/special-reports/top-10-pharma-drug-brand-ad-spenders-2022 (last visited on Feb. 1, 2024).

[27] Nicolas Florko, *Novo Nordisk bought prescribers over 450,000 meals and snacks to promote drugs like Ozempic*, National Center for Health Research (July 5, 2023), https://www.center4research.org/novo-nordisk-gave-doctors-450000-meals-ozempic/ (last visited on Feb. 1, 2024).

[28] *Id*.

[29] Erin Prater, *Ozempic manufacturer Novo Nordisk spent $11 million last year 'wining and dining' doctors. Experts slam the move as a breach of doctor-patient trust*, Fortune Well (July 21, 2023),

71.     As a result of Novo Nordisk's advertising and promotion efforts, Ozempic has been widely used throughout the United States. The number of prescriptions filled reached an all-time high of 373,000 in one week in February of 2023, with more than half of those being new prescriptions.[30] In June 2023, it was reported that new prescriptions for Ozempic had surged by 140 percent from the prior year.[31]

72.     On TikTok, the hashtag #Ozempic had 273 million views as of November 22, 2022,[32] and currently has over 1.3 billion views.[33]

73.     On June 15, 2023, NBC News published a report about the "thousands of weight-loss ads on social media for the drugs Ozempic and Wegovy." While many of those ads were found to be from online pharmacies, medical spas, and diet clinics, as of June of 2023, Novo Nordisk was still running online social-media ads for its semaglutide products, despite claiming in May that it would stop running ads due to a shortage of the drug.[34]

74.     On July 10, 2023, a global media company declared Ozempic as "2023's buzziest drug" and one of the "Hottest Brands, disrupting U.S. culture and industry."[35]

https://fortune.com/well/2023/07/21/ozempic-novo-nordisk-meals-travel-prescribing-doctors/ (last visited on Feb. 1, 2024); *See also* Erin Prater, *Weight-loss drugs like Ozempic and Wegovy may put certain people at risk of serious complications, researchers warn*, Fortune Well (March 7, 2023), https://fortune.com/well/2023/03/07/ozempic-wegovy-elevated-risk-intestinal-obstruction-later-type-2-diabetes-weight-loss-drug/ (last visited on Feb. 1, 2024).

[30] Annette Choi and Han Vu, *Ozempic prescriptions can be easy to get online. Its popularity for weight loss is hurting those who need it most* (March 17, 2023), https://www.cnn.com/2023/03/17/health/ozempic-shortage-tiktok-telehealth/ (last visited on Feb. 1, 2024).

[31] Daniel Gilbert, *Insurers clamping down on doctors who prescribe Ozempic for weight loss*, The Washington Post (June 12, 2023), https://www.washingtonpost.com/business/2023/06/11/weight-loss-ozempic-wegovy-insurance/ (last visited on Feb. 1, 2024).

[32] Dani Blum, *What Is Ozempic and Why Is It Getting So Much Attention?*, The New York Times (Nov. 22, 2022), https://www.nytimes.com/2022/11/22/well/ozempic-diabetes-weight-loss.html (last visited on Feb. 1, 2024).

[33] https://www.tiktok.com/tag/ozempic (last visited on Feb. 1, 2024).

[34] David Ingram, *More than 4,000 ads for Ozempic-style drugs found running on Instagram and Facebook*, NBC News (June 15, 2023), https://www.nbcnews.com/tech/internet/ozempic-weight-loss-drug-ads-instagram-wegovy-semaglutide-rcna88602 (last visited on Feb. 1, 2024).

[35] Phoebe Bain, *Ozempic was 2023's Buzziest Drug*, Ad Age (July 10, 2023), https://adage.com/article/special-report-hottest-brands/ozempic-hottest-brands-most-popular-marketing-2023/2500571 (last visited on Feb. 1, 2024).

75.     At all relevant times, Novo Nordisk was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and/or distribute Ozempic.

**D.     Novo Nordisk's Marketing and Promotion of Rybelsus**

76.     On September 20, 2019, the Novo Nordisk Defendants announced the FDA's approval of Rybelsus (semaglutide) tablets 7 mg or 14 mg in a press release stating that: "Rybelsus ... will be available in the U.S. beginning in Q4 2019.... Initial supply of Rybelsus will come from manufacturing facilities in Denmark; however, future supply for Rybelsus will come from ... a new manufacturing facility in Clayton, NC to prepare for the future demand of Rybelsus." The Novo Nordisk Defendants further stated that they were "working with health insurance providers with a goal of ensuring broad insurance coverage and patient access to the product. A savings card program will be available at the time of launch for eligible commercially insured patients to keep out of pocket costs down to as little as $10 a month." The Novo Nordisk Defendants acknowledged that the most common side effects associated with the use of Rybelsus included nausea, stomach (abdominal) pain, diarrhea, decreased appetite, vomiting, and constipation. While the Novo Nordisk Defendants listed possible thyroid tumors (including cancer), inflammation of the pancreas, changes in vision, low blood sugar, kidney problems, and serious allergic reactions as "serious side effects", they failed to list gastroparesis.[36]

77.     On January 16, 2020, the Novo Nordisk Defendants announced FDA approval of Rybelsus (semaglutide) tablets 7 mg and 14 mg prescribing information based on clinical data from the PIONEER 6 cardiovascular outcomes. In their announcement, the Novo

---

[36] *FDA approves Rybelsus® (semaglutide), the first GLP-1 analog treatment available in a pill for adults with type 2 diabetes*, PR Newswire (Sept. 20, 2019), https://www.prnewswire.com/news-releases/fda-approves-rybelsus-semaglutide-the-first-glp-1-analog-treatment-available-in-a-pill-for-adults-with-type-2-diabetes-300922438.html. (last visited on Feb. 29, 2024).

Nordisk Defendants acknowledged that the most common side effects of Rybelsus are "nausea, stomach (abdominal) pain, diarrhea, decreased appetite, vomiting, and constipation." While the Novo Nordisk Defendants listed possible thyroid tumors (including cancer), inflammation of the pancreas, changes in vision, low blood sugar, kidney problems (kidney failure), and serious allergic reactions as "serious side effects", they failed to list severe gastrointestinal events, including gastroparesis.[37]

78.     On January 12, 2023, the Novo Nordisk Defendants announced FDA approval of a label update for Rybelsus (semaglutide) allowing its use as a first-line option for adults with type 2 diabetes. The update removed the previous limitation that Rybelsus could not be used as an initial therapy option for treating patients with type 2 diabetes. The announcement reiterated that the Novo Nordisk Defendants "work[] with health insurance providers to ensure broad insurance coverage and patient access to Rybelsus. Eligible, commercially insured patients may pay as little as $10 for a one- to three-month prescription of this medicine." The Novo Nordisk Defendants acknowledged that the most common side effects of Rybelsus are "nausea, stomach (abdominal) pain, diarrhea, decreased appetite, vomiting, and constipation." While the Novo Nordisk Defendants listed possible thyroid tumors (including cancer), inflammation of the pancreas, changes in vision, low blood sugar, kidney problems (kidney failure), serious allergic reactions, and gallbladder problems as "serious side effects", they did not list gastroparesis as a side effect or risk, nor did they otherwise mention it.[38]

---

[37] *FDA approves Ozempic® for cardiovascular risk reduction in adults with type 2 diabetes and known heart disease, updates Rybelsus® label*, PR Newswire (Jan. 16, 2024), https://www.prnewswire.com/news-releases/fda-approves-ozempic-for-cardiovascular-risk-reduction-in-adults-with-type-2-diabetes-and-known-heart-disease-updates-rybelsus-label-300988672.html. (last visited on Feb. 29, 2024).
[38] *Novo Nordisk announces FDA approval of label update for Rybelsus® (semaglutide) allowing use as a first-line option for adults with type 2 diabetes*, PR Newswire (Jan. 12, 2023), https://www.prnewswire.com/news-

79.     The Novo Nordisk Defendants promoted the safety and sale of Rybelsus in the United States on its websites, in press releases, through in-person presentations, through the drug's label, in print materials, on social media, and through other public outlets.

80.     On September 22, 2020, the Novo Nordisk Defendants launched their first television ad for Rybelsus featuring an upbeat cover version of "You Are My Sunshine" by Simon Ravenhall. In the ad, the Novo Nordisk Defendants advertised that "people taking Rybelsus lost up to 8 pounds", even though it is not a weight loss drug.[39] Also, the Novo Nordisk Defendants identified only one "serious side effect" of taking Rybelsus in the ad, pancreatitis.

81.     From 2018 until present, the Novo Nordisk Defendants have spent $884,000,000 on running television ads in the United States to promote their semaglutide drugs (Ozempic, Wegovy and Rybelsus).[40]

82.     In 2021, the Novo Nordisk Defendants spent $307.6 million on Rybelsus ads, making it the No. 2 top spender that year.[41] In 2022, the Novo Nordisk Defendants spent $167.2 million on Rybelsus advertisements, making it the No. 7 top spender last year.[42] In 2022, the Novo Nordisk Defendants spent an estimated $123.9 million on Rybelsus television ads alone.[43] More than 60% of the Novo Nordisk Defendants' television advertisement budget was for a single ad "Down With Rybelsus" that sought to make the

releases/novo-nordisk-announces-fda-approval-of-label-update-for-rybelsus-semaglutide-allowing-use-as-a-first-line-option-for-adults-with-type-2-diabetes-301720965.html. (last visited on Feb. 29, 2024).
[39] RYBELSUS Tv Spot, 'Wake Up', https://www.ispot.tv/ad/nvgx/rybelsus-wake-up. (last visited on Feb. 29, 2024).
[40] Ritzau, *Novo Nordisk runs TV ads in US for multimillion-dollar sum*, MedWatch (Apr. 26, 2023), https://medwatch.com/News/Pharma___Biotech/article15680727.ece. (last visited on Feb. 29, 2024).
[41] Ben Adams, *The top 10 pharma drug ad spenders for 2022*, Fierce Pharma (May 1, 2023), https://www.fiercepharma.com/special-reports/top-10-pharma-drug-brand-ad-spenders-2022. (last visited on Feb. 29, 2024).
[42] *Id.*
[43] *Id.*

case for switching from other GLP-1RA's to Rybelsus.[44] The commercial featured an actor playing a physician with a voice-over stating that Rybelsus lowered A1C better than "a leading branded pill", referring to Merck & Co.'s diabetes drug, Januvia.[45] The television ad identified only one "serious side effect" of taking Rybelsus, pancreatitis.[46] As a result of its GLP-1RA treatments, including Rybelsus, the Novo Nordisk Defendants forecast sales growth of 13% to 19% for 2023.[47]

83.     On July 5, 2023, it was reported that the Novo Nordisk Defendants had spent $11,000,000 on food and travel for doctors as part of their efforts to promote their GLP-1 medications, including Rybelsus. In 2022 alone, the Novo Nordisk Defendants bought more than 457,000 meals to educate doctors and other prescribers about its GLP-1, with nearly 12,000 doctors receiving more than 50 meals and snacks from the Novo Nordisk Defendants. In 2022, the Novo Nordisk Defendants also spent $2 million flying doctors to London, Paris, Orlando, and Honolulu related to its GLP-1s.[48]

84.     On July 21, 2023, it was reported that Novo Nordisk had purchased more than 457,000 meals--at a total price of more than $9 million--to educate prescribers about its GLP-1s. The president and CEO of the Alliance of Community, who was interviewed for the article, described the expenditures as "outrageous" and suggested that the millions Novo Nordisk spent marketing its drugs to prescribers would be better used furthering research

---

[44] RYBELSUS TV Spot, 'Down With RYBELSUS', https://www.ispot.tv/ad/btuw/rybelsus-down-with-rybelsus. (last visited on Feb. 29, 2024).
[45] *Id*.
[46] *Id*.
[47] Ben Adams, *The top 10 pharma drug ad spenders for 2022*, Fierce Pharma (May 1, 2023), https://www.fiercepharma.com/special-reports/top-10-pharma-drug-brand-ad-spenders-2022. (last visited on Feb. 29, 2024).
[48] Nicolas Florko, *Novo Nordisk bought prescribers over 450,000 meals and snacks to promote drugs like Ozempic*, National Center for Health Research (July 5, 2023), https://www.center4research.org/novo-nordisk-gave-doctors-450000-meals-ozempic/. (last visited on Feb. 29, 2024).

about their potential side effects and long-term effectiveness. The author pointed out that research published in spring 2023 "suggested that GLP-1s could put patients at an elevated risk of a potentially fatal gastrointestinal condition that requires surgery."[49]

85.     As a result of the Novo Nordisk Defendants' advertising and promotion efforts, Rybelsus has been widely used throughout the United States. In its inaugural year alone, Rybelsus "defied full-year sales expectations in 2020" topping $350 million. Over 80% of these Rybelsus prescriptions were from patients new to the GLP-1RA class, not significantly dipping into the Novo Nordisk Defendants' already strong market position with Ozempic.[50]

86.     On June 15, 2023, NBC News published a report about the thousands of weight loss advertisements on social media for Defendants' drugs, including Rybelsus. While many of those ads were found to be from online pharmacies, medical spas, and diet clinics, as of June of 2023 the Novo Nordisk Defendants were still running online social-media ads for their semaglutide products, despite claiming in May that they would stop running ads due to a shortage of the drug.[51]

87.     On June 25, 2023, NBC News reported that the Novo Nordisk Defendants anticipate filing for FDA approval for Rybelsus for weight loss in people who are obese or

---

[49] Erin Prater, *Ozempic manufacturer Novo Nordisk spent $11 million last year 'wining and dining' doctors. Experts slam the move as a breach of doctor-patient trust*, Fortune (July 21, 2023), https://fortune.com/well/2023/07/21/ozempic-novo-nordisk-meals-travel-prescribing-doctors/. (last visited on Feb. 29, 2024).

[50] *Novo Nordisk's Rybelsus launch defies 2020 full-year sales expectations, despite the economic impacts of the Covid-19 pandemic*, Pharmaceutical Technology (Feb. 12, 2021), https://www.pharmaceutical-technology.com/analyst-comment/novo-nordisk-rybelsus-launch-sales/. (last visited on Feb. 29, 2024).

[51] David Ingram, *More than 4,000 ads for Ozempic-style drugs found running on Instagram and Facebook*, NBC News (June 15, 2023), https://www.nbcnews.com/tech/internet/ozempic-weight-loss-drug-ads-instagram-wegovy-semaglutide-rcna88602. (last visited on Feb. 29, 2024).

overweight, and do not have type 2 diabetes. ADA chief scientist, Dr. Robert Gabbay, called the development "a game changer."[52]

88.     At all relevant times, Novo Nordisk was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and/or distribute Rybelsus.

**E.     The Medical Literature and Clinical Trials Gave Defendants Notice of Gastroparesis Being Causally Associated with GLP-1RAs.**

89.     As previously noted, Ozempic (semaglutide) belongs to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

90.     Medications within the GLP-1RA class of drugs mimic the activities of physiologic GLP-1, which is a gut hormone that activates the GLP-1 receptor in the pancreas to stimulate the release of insulin and suppress glucagon.[53]

91.     Because the risk of gastroparesis is common to the entire class of drugs, any published literature regarding the association between gastroparesis and any GLP-1RA (such as tirzepatide, exenatide, liraglutide, albiglutide, dulaglutide, lixisenatide, and semaglutide) should have put Defendants on notice of the need to warn patients and prescribing physicians of the risk of gastroparesis associated with these drugs.

92.     In addition to pancreatic effects, the published medical literature shows that GLP-1 slows gastric emptying. As early as 2010, a study published in The Journal of Clinical Endocrinology & Metabolism indicated this effect.[54]

---

[52] Berkleley Lovelace Jr., *Effective pills for weight loss, including an oral version of Ozempic, are on the horizon*, NBC News (June 25, 2023), https://www.nbcnews.com/health/health-news/effective-pills-weight-loss-oral-version-ozempic-are-horizon-rcna90981. (last visited on Feb. 29, 2024).

[53] Deborah Hinnen, *Glucagon-Like Peptide 1 Receptor Agonists for Type 2 Diabetes*, 30(3) Diabetes Spectr., 202-210 (Aug. 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5556578/ (last visited on Feb. 2, 2024).

[54] Adam M. Deane et al., *Endogenous Glucagon-Like Peptide-1 Slows Gastric Emptying in Healthy Subjects, Attenuating Postprandial Glycemia*, 95(1) J Clinical Endo Metabolism, 225-221 (Jan. 1, 2010), https://academic.oup.com/jcem/article/95/1/215/2835243 (last visited on Feb. 2, 2024); American Society of Anesthesiologists, *Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests*, American Society of Anesthesiologists (June 29, 2023), https://www.asahq.org/about-

93.     Defendants knew or should have known of this risk of gastroparesis from the clinical trials, medical literature, and case reports.

94.     A 2016 trial funded by Novo Nordisk measuring semaglutide and cardiovascular outcomes in patients with type 2 diabetes found more gastrointestinal disorders in the semaglutide group than in the placebo group, including a severe adverse event report of impaired gastric emptying with semaglutide 0.5 mg together with other serious gastrointestinal adverse events such as abdominal pain (upper and lower), intestinal obstruction, change of bowel habits, vomiting, and diarrhea.[55]

95.     Two subjects in a semaglutide trial pool by Novo Nordisk reported moderate adverse events of impaired gastric emptying and both subjects permanently discontinued treatment due to the adverse events. Three subjects also reported mild adverse events of impaired gastric emptying in the semaglutide run-in period of trial 4376. The cardiovascular outcomes trials included two cases of gastroparesis with the first subject being diagnosed with severe gastroparesis after one month in the trial and second subject being diagnosed with gastroparesis after approximately two months in the trial.

96.     A study published in 2017 evaluated the effect of GLP-1RAs on gastrointestinal tract motility and residue rates and explained that "GLP-1 suppresses gastric emptying by inhibiting peristalsis of the stomach while increasing tonic contraction of the pyloric region." The study authors concluded that the GLP-1RA drug liraglutide "exhibited gastric-emptying

---

asa/newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective-surgery (last visited on Feb. 2, 2024).

[55] Steven P. Marso, M.D., et al., *Semaglutide and Cardiovascular Outcomes in Patients with Type 2 Diabetes*, N. Eng. J. Med. 375:1834-1844 (Nov. 10, 2016), https://www.nejm.org/doi/10.1056/NEJMoa1607141 (last visited on Feb. 2, 2024).

delaying effects" and "the drug also inhibited duodenal and small bowel movements at the same time."[56]

97.     Another study in 2017 reviewed the survey results from 10,987 patients and 851 physicians and found that "GI-related issues were the top two patient-reported reasons for GLP-1RA discontinuation in the past 6 months, with 'Made me feel sick' as the most frequently reported reason (64.4%), followed by 'Made me throw up' (45.4%)."[57] As explained above, these are symptoms of gastroparesis.

98.     A 2019 study of the GLP-1RA drug dulaglutide identified adverse events for impaired gastric emptying and diabetic gastroparesis.

99.     In August of 2020, medical literature advised that some "patients do not know they have diabetic gastroparesis until they are put on a glucagon-like peptide 1 (GLP-1) receptor agonist such as ... semaglutide ... to manage their blood glucose." The article went on to explain that "[t]his class of drugs can exacerbate the symptoms of diabetic gastroparesis.... Thus, GLP-1 receptor agonist therapy is not recommended for people who experience symptoms of gastroparesis."[58]

100.     In a September 2020 article funded and reviewed by Novo Nordisk, scientists affiliated with Novo Nordisk reported on two global clinical trials that evaluated the effect of semaglutide in patients with cardiovascular events and diabetes. More patients permanently discontinued taking oral semaglutide (11.6%) than placebo (6.5%) due to adverse events. The

---

[56] Y. Nakatoni et al., *Effect of GLP-1 receptor agonist on gastrointestinal tract motility and residue rates as evaluated by capsule endoscopy*, 43(5) Diabetes & Metabolism, 430-37 (Oct. 2017), https://www.sciencedirect.com/science/article/pii/S1262363617301076 (last visited on Feb. 2, 2024).
[57] Mirko V Sikirica et al., *Reasons for discontinuation of GLP1 receptor agonists: data from a real-world cross-sectional survey of physicians and their patients with type 2 diabetes*, 10 Diabetes Metab. Syndr. Obes., 403-412 (Sept. 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5630073/ (last visited on Feb. 2, 2024).
[58] Clipper F. Young et al., *Diabetic Gastroparesis: A Review*, 33(3) Diabetes Spect., 290-297 (Aug. 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7428659/ (last visited on Feb. 2, 2024).

most common adverse events associated with semaglutide were nausea (2.9% with semaglutide versus 0.5% with placebo), vomiting (1 .5% with semaglutide versus 0.3% with placebo), and diarrhea (1.4% with semaglutide versus 0.4% with placebo). Injectable semaglutide had a discontinuation rate of 11.5-14.5% (versus 5.7-7.6% with placebo) over a two-year period. The authors acknowledged the potential for severe gastrointestinal events, warning that "[f]or patients reporting severe adverse gastrointestinal reactions, it is advised to monitor renal function when initiating or escalating doses of oral semaglutide." For patients with other comorbidities, the study warned that "patients should be made aware of the occurrence of gastrointestinal adverse events with GLP-lRAs." The study further identified as one "key clinical take-home point" that "patients should be made aware of the occurrence of gastrointestinal adverse events with GLP-lRAs."[59]

101.    A July 2021 article funded and reviewed by Novo Nordisk considered 23 randomized control trials conducted across the United States, Japan, and China and concluded that "gastrointestinal disturbances" were "well-known" side effects associated with semaglutide use. When compared with placebos, the subcutaneous (injection) form of the drug induced nausea in up to 20% of patients (versus up to 8% on the placebo group), vomiting in up to 11.5% of patients (versus up to 3% in the placebo group) and diarrhea in up to 11.3% of patients (versus up to 6% in the placebo group). Overall, the percentage of patients experiencing adverse events that led to trial product discontinuation was greatest for gastrointestinal related adverse events, with some trials experiencing 100% discontinuation due to gastrointestinal related adverse events. The mean value of gastrointestinal related

---

[59] Ofri Mosenzon et al., *Oral semaglutide in patients with type 2 diabetes and cardiovascular disease, renal impairment, or other comorbidities, and in older patients*, Postgraduate Medicine (2020), 132:sup2, 37-47, https://www.tandfonline.com/doi/full/10.1080/00325481.2020.1800286 (last visited on Feb. 2, 2024).

adverse events that led to discontinuation averaged 57.75%. Semaglutide appears to be associated with more frequent vomiting and nausea as compared to other GLP-1RAs. The study acknowledges that while nausea and vomiting are unwanted side effects, "they may be partly responsible for aspects of the drug's efficacy[.]"[60]

102.    An October 2021 article in the Journal of Investigative Medicine ("JIM") concluded that because gastroparesis can be associated with several medications, "[i]t is crucial to identify the causative drugs as discontinuation of the drug can result in resolution of the symptoms[.]" In diabetics, making this determination can be particularly "tricky" because both diabetes and GLP-IRAs can cause delayed gastric emptying. As such, "the timeline of drug initiation and symptom onset becomes of the upmost importance." The authors reviewed two case reports (discussed below) and concluded that history taking and making an accurate diagnosis of diabetic gastroparesis versus medication-induced gastroparesis is critical.[61]

103.    Case Report #1 in JIM involved a 52-year-old female with long-standing (10 years) well-controlled, type 2 diabetes who had been taking weekly semaglutide injections approximately one month prior to the onset of gastroparesis symptoms. The patient was referred with a 7-month history of post-prandial epigastric pain, accompanied by fullness, bloating, and nausea. A gastric emptying study showed a 24% retention of isotope in the patient's stomach at four hours, indicative of delayed gastric emptying. The patient discontinued semaglutide and her symptoms resolved after six weeks. The case report authors

---

[60] Mark M. Smits and Daniel H. Van Raalte, *Safety of Semaglutide*, Front. Endocrinol. (July 7, 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8294388/ (last visited on Feb. 2, 2024).
[61] M Ammar Kalas, Gian Marco Galura, and Richard W. McCallum, *Medication-Induced Gastroparesis: A Case Report*, J Investig. Med High Impact Case Rep. 2021 Jan-Dec; 9: 23247096211051919, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8529310/ (last visited on Feb. 2, 2024).

concluded that "thorough history taking revealed the cause [of gastroparesis] to be medication induced."[62]

104.    Case Report #2 in JIM involved a 57-year-old female with a long-standing (16 years) type 2 diabetes who had been taking weekly dulaglutide injections (another GLP-1RA) for 15 months and suffering from abdominal bloating, nausea, and vomiting for 12 of those months. A gastric emptying study showed 35% retention of isotope in the patient's stomach at four hours, indicating delayed gastric emptying. After discontinuing dulaglutide, the patient experienced a gradual resolution of symptoms over a four-week period.[63]

105.    A June 2022 study reported GLP-1RA Mounjaro (tirzepatide) adverse events of vomiting, nausea, and "severe or serious gastrointestinal events."[64]

106.    An October 2022 study analyzed 5,442 GLP-1RA adverse gastrointestinal events. 32% were serious, including 40 deaths, 53 life-threatening conditions, and 772 hospitalizations. The primary events were nausea and vomiting. There were also adverse events for impaired gastric emptying.[65]

107.    A January 2023 meta-analysis of GLP-1RA (Mounjaro) adverse events reported high rates of nausea and vomiting.[66]

---

[62] *Id*.
[63] *Id*.
[64] Ania M. Jastreboff et al., *Tirzepatride Once Weekly for the Treatment of Obesity*, N Engl J Med, at 214 (June 4, 2022), https://www.nejm.org/doi/10.1056/NEJMoa2206038 (last visited on Feb. 2, 2024).
[65] Yamin Shu et al., *Gastrointestinal adverse events associated with semaglutide: A pharmacovigilance study based on FDA adverse event reporting system*, Front. Public Health (Oct. 20, 2022), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9631444/ (last visited on Feb. 2, 2024).
[66] Rahul Mishra et al., *Adverse Events Related to Tirzepatide*, J. of Endocrine Society (Jan. 26, 2023), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9915969/ (last visited on Feb. 2, 2024).

108.    In February 2023, a longitudinal study of GLP-1RA (dulaglutide) reported adverse events for nausea and vomiting, and one adverse event of impaired gastric emptying.[67]

109.    On March 28, 2023, a case study concluded that impaired gastric emptying is "a significant safety concern, especially since it is consistent with the known mechanism of action of the drug."[68]

110.    On June 29, 2023, the American Society of Anesthesiologists ("ASA") warned that patients taking semaglutide and other GLP-1RAs should stop the medication at least a week before elective surgery because these medications "delay gastric (stomach) emptying" and "the delay in stomach emptying could be associated with an increased risk of regurgitation and aspiration of food into the airways and lungs during general anesthesia and deep sedation." The ASA also warned that the risk is higher where patients on these medications have experienced nausea and vomiting.[69]

111.    News sources have identified the potential for serious side effects in users of Ozempic, including gastroparesis, leading to hospitalization.[70] For example, NBC News

---

[67] Rina Chin et al., *Safety and effectiveness of dulaglutide 0.75 mg in Japanese patients with type 2 diabetes in real-world clinical practice: 36 month post-marketing observational study*, J Diabetes Investig (Nov. 11, 2022), https://pubmed.ncbi.nlm.nih.gov/36367417/ (last visited on Feb. 2, 2024).

[68] Sandra R. Klein and Ion A Hobai, *Semaglutide, delayed gastric emptying, and intraoperative pulmonary aspiration: a case report*, Can J. Anesth (Mar. 28, 2023), https://pubmed.ncbi.nlm.nih.gov/36977934/ (last visited on Feb. 2, 2024).

[69] American Society of Anesthesiologists, *Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests* (June 29, 2023), https://www.asahq.org/about-asa/newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective-surgery (last visited on Feb. 2, 2024).

[70] Penny Min, *Ozempic May Cause Potential Hospitalizations*, Healthnews (June 26, 2023), https://healthnews.com/news/ozempic-may-cause-potential-hospitalizations/ (last visited on Feb. 2, 2024); Elizabeth Laura Nelson, *These Are the 5 Most Common Ozempic Side Effects, According to Doctors, Best Life* (April 3, 2023), https://bestlifeonline.com/ozempic-side-effects-news/ (last visited on Feb. 2, 2024); Cara Lynn Shultz, *Ozempic and Wegovy May Cause Stomach Paralysis in Some Patients*, People (July 26, 2023), https://people.com/ozempic-wegovy-weight-loss-stomach-paralysis-7565833 (last visited on Feb. 2, 2024); CBS News Philadelphia, Popular weight loss drugs Ozempic and Wegovy may cause stomach paralysis, doctors warn (July 25, 2023), https://www.cbsnews.com/philadelphia/news/weight-loss-drugs-wegovy-ozempic-stomach-paralysis/ (last visited on Feb. 2, 2024).

reported in January 2023 that some Ozempic users were discontinuing use because their symptoms were unbearable, and one user said that five weeks into taking the medication she found herself unable to move off the bathroom floor because she had "vomited so much that [she] didn't have the energy to get up."[71] CNN reported in July that one Ozempic user diagnosed with gastroparesis vomits so frequently that she had to take a leave of absence from her teaching job.[72]

112.   A July 25, 2023, article in Rolling Stone magazine-"Ozempic Users Report Stomach Paralysis from WeightLoss Drug: 'So Much Hell'"-highlighted three patients who have suffered severe gastrointestinal related events, including gastroparesis, as a result of their use of GLP-1RAs. Patient 1 (female, age 37) reported incidents of vomiting multiple times per day and being unable to eat. The patient's physician diagnosed her with severe gastroparesis and concluded that her problems were caused and/or exacerbated by her use of a GLP-1RA medication. Patient 2 (female) used Ozempic for one year and reported incidents of vomiting, including multiple times per day. The patient's physician diagnosed her with severe gastroparesis related to her Ozempic use. Patient 3 (female, age 42) experienced severe nausea both during and after she discontinued use of a GLP-1RA. In a statement to Rolling Stone, Novo Nordisk acknowledged that "[t]he most common adverse reactions, as with all GLP-1 RAs, are gastrointestinal related." Novo Nordisk further stated that while "GLP-1 RAs are known to cause a delay in gastric emptying, ... [s]ymptoms of delayed

---

[71] Aria Bendix and Berkeley Lovelace Jr., *What it's like to take the blockbuster drugs Ozempic and Wegovy, from severe side effects to losing 50 pounds*, NBC News (Jan. 29, 2023), https://www.nbcnews.com/health/health-news/ozempic-wegovy-diabetes-weight-loss-side-effects-rcna66493 (last visited on Feb. 2, 2024).

[72] Brenda Goodman, *They took blockbuster drugs for weight loss and diabetes. Now their stomachs are paralyzed*, CNN (July 25, 2023), https://www.cnn.com/2023/07/25/health/weight-loss-diabetes-drugs-gastroparesis/index.html (last visited on Feb. 2, 2024).

gastric emptying, nausea and vomiting are listed as side effects." Novo Nordisk did not claim

to have warned consumers about gastroparesis, or other severe gastrointestinal issues.[73]

113.    On July 25, 2023, CNN Health reported that patients taking Ozempic have been

diagnosed "with severe gastroparesis, or stomach paralysis, which their doctors think may

have resulted from or been exacerbated by the medication they were taking, Ozempic."

Another patient taking Wegovy (semaglutide) suffered ongoing nausea and vomiting, which

was not diagnosed, but which needed to be managed with Zofran and prescription

probiotics.[74]

114.    On July 26, 2023, a New York hospital published an article to its online health

blog section "What You Need to Know About Gastroparesis" entitled "Delayed Stomach

Emptying Can Be Result of Diabetes or New Weight-Loss Medicines." It was reported that a

growing number of gastroparesis cases had been seen in people taking GLP- RAs. The article

noted that the weight-loss drugs can delay or decrease the contraction of muscles that mix

and propel contents in the gastrointestinal tract leading to delayed gastric emptying. One

concern raised was that patients and doctors often assume the symptoms of gastroparesis are

reflux or other gastrointestinal conditions, meaning it may take a long time for someone to be

diagnosed correctly.[75]

115.    In an October 5, 2023, Research Letter published in the Journal of the American

Medical Association ("JAMA"), the authors examined gastrointestinal adverse events

[73] CT Jones, *Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*, Rolling Stones (July 25, 2023), https://www.rollingstone.com/culture/culture-news/ozempic-stomach-paralysis-weight-loss-side-effects-1234794601/ (last visited on Feb. 2, 2024).
[74] Brenda Goodman, *They took blockbuster drugs for weight loss and diabetes. Now their stomachs are paralyzed*, CNN Health (July 25, 2023), https://www.cnn.com/2023/07/25/health/weight-loss-diabetes-drugs-gastroparesis (last visited on Feb. 2, 2024).
[75] *Delayed Stomach Emptying Can Be Result of Diabetes or New Weight-Loss Medicines*, Montefiore Health Blog article (released July 26, 2023), https://www.montefiorenyack.org/health-blog/what-you-need-know-about-gastroparesis (last visited on Feb. 2, 2024).

associated with GLP-1RAs used for weight loss in clinical setting and reported that use of GLP-1RAs compared with use of bupropion-naltrexone was associated with increased risk of pancreatitis, gastroparesis, and bowel obstruction.[76] The study found that patients prescribed GLP-1RAs were at 4.22 times higher risk of intestinal obstruction and at 3.67 times higher risk of gastroparesis.

116.    The medical literature listed above is not a comprehensive list, and several other case reports have indicated that GLP-1RAs can cause gastroparesis and impaired gastric emptying.[77]

117.    Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae, but they ignored the causal association. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, medical literature, including the medical literature and case reports referenced above in this Complaint.

118.    Defendants not only knew or should have known that their GLP-1RAs cause delayed gastric emptying, resulting in risks of gastroparesis, but they may have sought out the delayed gastric emptying effect due to its association with weight loss. For example, a recent study published in 2023 notes that "it has been previously proposed that long-acting

---

[76] Mohit Sodhi, MSc et al., *Risk of Gastrointestinal Adverse Events Associated With Glucagon-Like Peptide-1 Receptor Agonists for Weight Loss*, Jama Network (Oct. 5, 2023), https://jamanetwork.com/journals/jama/fullarticle/2810542 (last visited on Feb. 2, 2024).
[77] Cure, *Exenatide and Rare Adverse Events*, N. Eng. J. Med. (May 1, 2008) (https://doi.org/10.1056/nejmc0707137); Puja Rai et al., *Liraglutide-induced Acute Gastroparesis*, Cureus (Dec. 28, 2018) (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6402745/); Guo, *A Post Hoc Pooled Analysis of Two Randomized Trials*, Diabetes Ther (2020) (https://doi.org/10.1007®sl3300-020-00869-z); Sami Almustanyir et al., *Gastroparesis With the Initiation of Liraglutide: A Case Report*, Cureus (Nov. 28, 2020) (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7773310/); Yo Ishihara et al., *Suspected Gastroparesis With Concurrent Gastroesophageal Reflux Disease Induced by Low-Dose Liraglutide*, Cureus (Jul. 16, 2022) (https://pubmed.ncbi.nlm.nih.gov/35983392/); Veronica Preda et al., *Gastroparesis with bezoar formation in patients treated with glucagon-like peptide-1 receptor agonists: potential relevance for bariatric and other gastric surgery*, BJS Open (Feb. 1, 2023) (https://academic.oup.com/bjsopen/article/7/1/zrac169/7021142?login=false).

GLP-1RAs could hypothetically contribute to reduced energy intake and weight loss by delaying GE [gastric emptying,]" and the study authors suggested "further exploration of peripheral mechanisms through which s.c. semaglutide, particularly at a dose of 2.4. mg/week, could potentially contribute to reduced food and energy intake."[78]

**F.   Defendants Failed to Warn of the Risk of Gastroparesis from Ozempic and Rybelsus**

119.   The Prescribing Information for Ozempic (the "label") discloses "Warnings and Precautions" and "Adverse Reactions" but does not adequately warn of the risk of gastroparesis and its sequalae.[79]

120.   The Ozempic label lists nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Ozempic patients, but it does not include these adverse reactions in its "Warnings and Precautions" section, nor does it warn that these adverse reactions are symptoms of more severe conditions, including gastroparesis. In fact, gastroparesis is not in the label.

121.   Instead of properly disclosing gastrointestinal risks, the label discloses delayed gastric emptying in the "Drug Interaction" section and notes that Ozempic "may impact absorption of concomitantly administered oral medications." Similarly, in the "Mechanism of Action" section, the label minimizes gastrointestinal risks by stating that "[t]he mechanism of blood glucose lowering also involves a minor delay in gastric emptying in the early postprandial phase." These statements only describe the drug's mechanism of action and do

---

[78] Mojca Jensterle PhD et al., *Semaglutide delays 4-hour gastric emptying in women with polycystic ovary syndrome and obesity*, 25(4) Diabetes Obes. Metab. 975-984 (April 2023), https://dom-pubs.onlinelibrary.wiley.com/doi/epdf/10.1111/dom.14944 (last visited on Feb. 2, 2024).
[79] *See* https://www.novo-pi.com/ozempic.pdf.

not disclose gastroparesis as a risk of taking Ozempic, nor do they disclose gastroparesis as a chronic condition that can result as a consequence of taking Ozempic.

122.    Similarly, Novo Nordisk's main promotional website for Ozempic (ozempic.com) includes a variety of information about the benefits of Ozempic relating to blood sugar, cardiovascular health, and weight loss, as well as "Important Safety Information" - however, Novo Nordisk does not disclose the risk of gastroparesis within the "Important Safety Information" section of their promotional website.[80]

123.    None of Defendants' additional advertising or promotional materials warned prescription providers or the general public of the risks of gastroparesis and its sequalae.

124.    In January 2020, Novo Nordisk removed the "Instructions" portion from Section 17 "Patient Counseling Information" of the Ozempic label, which had instructed prescribers to "[a]dvise patients that the most common side effects of Ozempic are nausea, vomiting, diarrhea, abdominal pain and constipation." These instructions were present in the 2017 and 2019 labels.

125.    The 2017 and 2019 labels for Ozempic also instructed physicians that "vomiting ... decreases over time in the majority of patients." As a result, a physician would not only fail to appreciate vomiting as a symptom of gastroparesis but, even worse, would encourage a patient to continue using Ozempic despite symptoms of gastroparesis.

126.    In its section on "Females and Males of Reproductive Potential," the Ozempic label advises female users to discontinue Ozempic at least 2 months before a planned pregnancy due to the long washout period for semaglutide. This demonstrates that Novo Nordisk knew or should have known that symptoms, such as continuous and violent

---

[80] *See* Ozempic.com (last visited on Feb. 2, 2024).

vomiting, can linger long after the drugs are discontinued and shows the need to warn of severe injuries.

127.    From the date Novo Nordisk received FDA approval to market Ozempic until the present time, Novo Nordisk made, distributed, marketed, and/or sold Ozempic without adequate warning to Plaintiffs prescribing physician(s) and/or Plaintiffs that Ozempic was causally associated with and/or could cause severe injuries.

128.    The Prescribing Information for Rybelsus (the "Rybelsus label") discloses warnings, precautions, and adverse reactions, but it does not disclose the risk of gastroparesis. Instead, it discloses delayed gastric emptying under the "Drug Interactions" heading and notes that Rybelsus "has the potential to impact the absorption of other oral medications." Further, under the "Mechanism of Action" section, the Prescribing Information states that "[t]he mechanism of blood glucose lowering also involves a minor delay in gastric emptying in the early postprandial phase."[81] These statements do not disclose gastroparesis or delayed gastric emptying as risks of taking Rybelsus, nor do they disclose gastroparesis as a side effect or condition that can result as a consequence of taking Rybelsus.

129.    The Rybelsus label lists nausea, abdominal pain, diarrhea, decreased appetite, vomiting and constipation as common adverse reactions reported in Rybelsus patients but does not include vomiting in its "Warnings and Precautions" section, and it does not indicate a severity of risk.[82] Gastroparesis is not mentioned at all.

130.    Similarly, the Novo Nordisk's main promotional website for Rybelsus (rybelsus.com) includes a variety of information about the benefits of Rybelsus relating to blood sugar and weight loss, as well as "Important Safety Information"; however, Novo

---

[81] Rybelsus prescribing information, https://www.novo-pi.com/rybelsus.pdf (last visited on Feb. 29, 2024).
[82] *Id.*

Nordisk does not disclose any risks causally associated with gastroparesis within the "Important Safety Information" section or elsewhere on its promotional website.[83]

131.   From the date Novo Nordisk received FDA approval to market Rybelsus until the present time, Novo Nordisk made, distributed, marketed, and/or sold Rybelsus without adequate warning to Plaintiff's prescribing physician(s) and/or Plaintiff that Rybelsus was causally associated with and/or could cause gastroparesis and its sequelae.

132.   None of Novo Nordisk's additional advertising or promotional materials warned prescription providers or the general public of the risks of gastroparesis and its sequalae associated with Ozempic and Rybelsus.

133.   Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of severe injuries. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, and the medical literature, including the medical literature and case reports referenced in this Complaint.

134.   Defendants ignored the causal association between the use of GLP-1RAs and the risk of severe injuries.

135.   Novo Nordisk's failure to disclose information that they possessed regarding the causal association between the use of GLP-1RAs and the risk of severe injuries, rendered the warnings for Ozempic and Rybelsus inadequate.

136.   As a result of Novo Nordisk's inadequate warnings, the medical community at large, and Plaintiffs prescribing physician in particular, were not aware that Ozempic and Rybelsus can cause severe injuries, nor were they aware that "common adverse reactions" listed on the label might be such injuries.

---

[83] *See* Rybelsus.com (last visited on Feb. 29, 2024).

137.    , had Novo Nordisk adequately warned Plaintiffs prescribing physician(s) that Ozempic and Rybelsus are causally associated with severe injuries, then the physicians' prescribing decision would have changed by not prescribing Ozempic and Rybelsus, or by monitoring Plaintiffs' health for symptoms of such injuries and discontinuing Ozempic and Rybelsus when the symptoms first started.

138.    By reason of the foregoing acts and omissions, Plaintiffs were and still are caused to suffer from severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

## CLAIMS UNDER ALABAMA LAW

### FIRST CAUSE OF ACTION
**Negligence**

139.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

140.    Alabama imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

141.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiff.

142.    At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

143.    At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the inspection of Ozempic, and to locate visible or hidden defects in the product that could lead to harm or injury.

144.    At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

145.    At all times mentioned herein, Defendants breached that duty to Plaintiff when they produced, manufactured, sold, distributed, and marketed the Ozempic.

146.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

147.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

148.    At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

149.    At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

150.     As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

151.     As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### SECOND CAUSE OF ACTION
**Failure to Warn**

152.     Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

153.     Alabama imposes a duty on one who sells any product in a defective condition that is unreasonably dangerous to the user or consumer and imposes a liability for any physical harm thereby caused to the ultimate user or consumer.

154.     At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

155.     Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

156.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

157.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

158.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

159.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

160.    At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

161.    At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiff.

162.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

163.   At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

164.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

165.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their product, Ozempic.

166.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

167.   The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

168.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

169.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

170.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

171.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

172.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

173.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

174.    Had Plaintiff's prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

175.    Had Plaintiff's prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician(s) would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

176.    If Plaintiff had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic, and/or suffered from injuries.

177.    If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Ozempic, and/or suffered injuries.

178.    If Plaintiff had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Ozempic.

179.    If Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic.

180.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous product, Ozempic.

181.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the

health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

182.    Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

183.    Said inadequate warnings for Defendants' drug, Ozempic, was a substantial factor in causing Plaintiff's injuries.

184.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

185.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**

186.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

187.    Defendants' express warranties failed its essential purpose and Defendants failed to acknowledge, replace, or repair the malfunctioning component of Ozempic.

188.    At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

189.    The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic label, website, advertisements, promotional materials, and through other statements.

190.    As a result of Defendants' express warranties, Plaintiff's prescribing physician was induced to prescribe Ozempic to Plaintiff, and Plaintiff was induced to use Ozempic.

191.    At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic based upon their express warranties.

192.    At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Ozempic based upon their express warranties.

193.    At all relevant times, Defendants knew or should have known that Ozempic was unreasonably dangerous because of the increased risk of severe injuries, especially when the drugs were used in the form and manner as provided by Defendants.

194.    At all relevant times, Defendants knew or should have known that Ozempic had not been sufficiently and/or adequately tested for safety.

195.    The unreasonably dangerous characteristics of Ozempic was beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drug's characteristics.

196.    The unreasonably dangerous characteristics of Ozempic was beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drug's characteristics.

197.    The express warranties made by Defendants regarding the safety of Ozempic were made with the intent to induce Plaintiff to use the product and/or Plaintiff's prescribing physician(s) to prescribe the product.

198.    Defendants knew and/or should have known that by making the express warranties to Plaintiff and/or Plaintiff's prescribing physician(s), it would be the natural tendency of Plaintiff to use Ozempic and/or the natural tendency of Plaintiff's prescribing physician(s) to prescribe Ozempic.

199.    Plaintiff and Plaintiff's prescribing physician(s), as well as members of the medical community, justifiably relied on the express warranties of Defendants identified herein.

200.    Had Defendants not made these express warranties, Plaintiff would not have used Ozempic, and/or Plaintiff's prescribing physician(s) would not have prescribed Ozempic.

201.    Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

202.    Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

203.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

204.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal

injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

205.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

<u>**FOURTH CAUSE OF ACTION**</u>
**Manufacturing Defect**

206.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

207.    Alabama imposes liability for physical harm caused to the ultimate user or consumer on one who sells any product in a defective condition unreasonably dangerous to the user or consumer.

208.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

209.    At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

210.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

211.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

212.    At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

213.    At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

214.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

215.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
### Consumer Fraud-Unfair or Deceptive Practice under State Law

216.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

217.    Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Ozempic.

218. Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

219. Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

220. Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiff in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic.

221. Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

222. The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

223. Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

224. Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

225.     Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

226.     Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic, as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

227.     As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

228.     As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER ARIZONA LAW

### FIRST CAUSE OF ACTION
**Negligence**

229.     Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

230.     Arizona imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

231.     At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiffs.

232.     At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

233.     At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

234.     At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care, as Plaintiffs was reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

235.     At all times mentioned herein, Defendants breached that duty to Plaintiffs when they produced, manufactured, sold, distributed, and marketed the Ozempic.

236.     Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

237.     At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic were unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

238.     At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

239.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

240.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

241.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

242.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

243.    Arizona imposes a duty on manufacturers and sellers to warn purchasers and consumers of the dangerous prosperities of a product.

244.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic and Rybelsus that was used by Plaintiffs.

245.    Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the

condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

246.     At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic were unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

247.     Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiffs, without adequate warnings.

248.     Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiffs' prescribing physician(s), without adequate warnings.

249.     Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

250.     At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

251.     At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiffs.

252.     Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a

duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

253.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

254.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

255.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

256.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

257.    The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

258.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

259.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

260.     Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

261.     Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

262.     Plaintiffs had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiffs' reliance upon Defendants' warnings was reasonable.

263.     Plaintiffs' prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

264.     Had Plaintiffs' prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

265.     Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

266.     If Plaintiffs had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiffs would not have used Ozempic and Rybelsus and/or suffered from injuries.

267.     If Plaintiffs had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiffs would not have used Ozempic and/or suffered injuries.

268.     If Plaintiffs had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiffs would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

269.     If Plaintiffs had informed Plaintiffs' prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiffs' prescribing physician(s) would not have prescribed Ozempic.

270.     By reason of the foregoing, Defendants have become liable to Plaintiffs for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

271.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable

risk to the health of consumers and to Plaintiffs in particular, and Defendants are therefore liable for the injuries sustained by Plaintiffs.

272.     Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

273.     Said inadequate warnings for Defendants' drugs Ozempic were a substantial factor in causing Plaintiffs' injuries.

274.     As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

275.     As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

276.     Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

277.     At all relevant times, Defendants expressly warranted to Plaintiffs and Plaintiffs' prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

278.     The aforementioned express warranties were made to Plaintiffs and Plaintiffs'

prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional

materials, and through other statements.

279.     Plaintiffs' injuries and damages were directly caused by Defendants' breach of the

aforementioned express warranties.

280.     Plaintiffs' injuries and damages arose from a reasonably anticipated use of the

products by Plaintiff.

281.     Accordingly, Defendants are liable as a result of their breach of express

warranties to Plaintiffs.

282.     As a direct or proximate result of the foregoing acts and omissions, Plaintiffs was

caused to suffer serious and dangerous injuries, which resulted in other severe and personal

injuries which are permanent and lasting in nature, including physical pain, mental anguish,

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring

and/or medications, and fear of developing any of the above-named health consequences.

283.     As a result of the foregoing acts and omissions Plaintiffs did incur medical,

health, incidental, and related expenses, and requires and/or will require more health care and

services. Plaintiffs are informed and believe and further allege that Plaintiffs will require

future medical and/or hospital care, attention, and services.

<u>**FOURTH CAUSE OF ACTION**</u>
**Manufacturing Defect**

284.     Plaintiffs repeat, reiterate, and realleges each and every allegation of this

Complaint contained in each of the foregoing paragraphs inclusive, with the same force and

effect as if more fully set forth herein.

285.    Arizona imposes liability for physical harm caused to the ultimate user or consumer on one who sells any product in a defective condition unreasonably dangerous to the user or consumer.

286.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that were used by Plaintiffs.

287.    At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

288.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

289.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

290.    At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

291.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

292.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish,

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring

and/or medications, and fear of developing any of the above-named health consequences.

293.    As a result of the foregoing acts and omissions Plaintiffs did incur medical,

health, incidental, and related expenses, and requires and/or will require more health care and

services. Plaintiffs are informed and believe and further allege that Plaintiffs will require

future medical and/or hospital care, attention, and services.

**FIFTH CAUSE OF ACTION**
**Consumer Fraud-Unfair or Deceptive Practice under State Law**

294.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this

Complaint contained in each of the foregoing paragraphs inclusive, with the same force and

effect as if more fully set forth herein.

295.    Defendants were at all times material hereto engaged in the conduct of trade and

commerce throughout the United States and within the state which Plaintiffs used Ozempic.

296.    Defendants engaged in trade and commerce with respect to designing,

manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of

Ozempic into the stream of commerce.

297.    Defendants while engaged in trade and commerce, knew or should have known

that the use of Ozempic causes serious and dangerous injuries but failed to warn the public,

including Plaintiffs and Plaintiffs' prescribing physician(s), of the same.

298.    Defendants made untrue, deceptive, or misleading representations of material

facts to and knowingly omitted and/or concealed material facts from Plaintiffs in product

packaging, labeling, advertising, promotional campaigns, and materials, among other ways,

regarding the safety and use of Ozempic.

299.    Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

300.    The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiffs, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

301.    Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

302.    Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

303.    Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

304.    Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

305.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

306.     As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER CALIFORNIA LAW

### FIRST CAUSE OF ACTION
**Negligence**

307.     Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

308.     California imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

309.     At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiff.

310.     At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

311.     At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

312.    At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

313.    At all times mentioned herein, Defendants breached that duty to Plaintiff when they produced, manufactured, sold, distributed, and marketed the Ozempic.

314.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

315.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

316.    At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

317.    At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

318.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

319.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and

services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

320.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

321.    California imposes a duty on manufacturers and sellers to warn purchasers and consumers of a particular risk that was known or knowable in the light of generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

322.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

323.    Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

324.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

325.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

326.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

327.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

328.    At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

329.    At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiff.

330.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

331.    At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

332.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

333.     The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

334.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

335.     The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

336.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

337.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

338.     Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

339.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

340.   Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

341.   Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

342.   Had Plaintiff's prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

343.   Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

344.   If Plaintiff had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from injuries.

345.     If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Ozempic and/or suffered injuries.

346.     If Plaintiff had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiff would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

347.     If Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic.

348.     By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

349.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

350.     Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

351.     Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiff's injuries.

352.     As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal

injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

353.     As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
### Breach of Express Warranty

354.     Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

355.     At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

356.     The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

357.     Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

358.     Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

359.     Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

360.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

361.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and furthers alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
### Manufacturing Defect

362.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

363.    California imposes liability on the seller of a completed product that has any defect in the completed product, regardless of the source of the defect.

364.    At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

365.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

366.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because

they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

367.    At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

368.    At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

369.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

370.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## **FIFTH CAUSE OF ACTION**
### **Consumer Fraud-Unfair or Deceptive Practice under State Law**

371.    Plaintiff repeats, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

372.    Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Ozempic.

373.     Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

374.     Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

375.     Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiff in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic.

376.     Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

377.     The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

378.     Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

379.     Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

380.     Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

381.     Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

382.     As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

383.     As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER GEORGIA LAW

### FIRST CAUSE OF ACTION
### Negligence

384.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

385.   Georgia imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

386.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiffs.

387.   At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

388.   At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

389.   At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care, as Plaintiffs were reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

390.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

391.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

392.   At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

393.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

394.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

395.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

<u>**SECOND CAUSE OF ACTION**</u>
**Failure to Warn**

396.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

397.    Georgia law imposes liability on a manufacturer when the use of a product injures the user or consumer.

398.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiffs.

399.    Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

400.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

401.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiffs, without adequate warnings.

402.    Despite the fact that Defendants knew or should have known that Ozempic a caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiffs' prescribing physician(s), without adequate warnings.

403.    Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

404.    At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

405.    At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiffs.

406.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or

distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

407.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

408.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

409.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

410.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

411.    The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

412.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

413.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

414.    Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

415.    Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

416.    Plaintiffs had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiffs' reliance upon Defendants' warnings was reasonable.

417.    Plaintiffs' prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

418.    Had Plaintiffs' prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

419.    Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

420.    If Plaintiffs had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiffs would not have used Ozempic and/or suffered from injuries.

421.    If Plaintiffs had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiffs would not have used Ozempic and/or suffered injuries.

422.    If Plaintiffs had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiffs would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

423.    If Plaintiff had informed Plaintiffs' prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiffs' prescribing physician(s) would not have prescribed Ozempic.

424.    By reason of the foregoing, Defendants have become liable to Plaintiffs for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

425.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the

health of consumers and to Plaintiffs in particular, and Defendants are therefore liable for the injuries sustained by Plaintiffs.

426.    Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

427.    Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiffs' injuries.

428.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

429.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

430.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

431.    At all relevant times, Defendants expressly warranted to Plaintiffs and Plaintiffs' prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

432.    The aforementioned express warranties were made to Plaintiffs and Plaintiffs'

prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional

materials, and through other statements.

433.    Plaintiffs' injuries and damages were directly caused by Defendants' breach of the

aforementioned express warranties.

434.    Plaintiffs' injuries and damages arose from a reasonably anticipated use of the

products by Plaintiff.

435.    Accordingly, Defendants are liable as a result of their breach of express

warranties to Plaintiffs.

436.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs was

caused to suffer serious and dangerous injuries, which resulted in other severe and personal

injuries which are permanent and lasting in nature, including physical pain, mental anguish,

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring

and/or medications, and fear of developing any of the above-named health consequences.

437.    As a result of the foregoing acts and omissions Plaintiffs did incur medical,

health, incidental, and related expenses, and requires and/or will require more health care and

services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require

future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
### Manufacturing Defect

438.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this

Complaint contained in each of the foregoing paragraphs inclusive, with the same force and

effect as if more fully set forth herein.

439. At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

440. Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

441. At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

442. At all relevant times, Plaintiffs were a foreseeable user or consumer of Ozempic.

443. At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

444. As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

445. As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

**FIFTH CAUSE OF ACTION**
**Consumer Fraud-Unfair or Deceptive Practice under State Law**

446.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

447.    Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiffs used Ozempic.

448.    Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

449.    Defendants, while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiffs and Plaintiffs' prescribing physician(s), of the same.

450.    Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiffs in product packaging, labeling, advertising, promotional campaigns, and materials, among other ways, regarding the safety and use of Ozempic.

451.    Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

452.    The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and

consumers such as Plaintiffs, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

453.   Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

454.   Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

455.   Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

456.   Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

457.   As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

458.   As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER ILLINOIS LAW

### FIRST CAUSE OF ACTION
**Negligence**

459.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

460.    Illinois imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

461.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic and Rybelsus that was used by Plaintiffs.

462.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic and Rybelsus.

463.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the inspection of Ozempic and Rybelsus and to locate visible or hidden defects in the product that could lead to harm or injury.

464.    At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Ozempic and Rybelsus's probable use and to be endangered in the event that Ozempic and Rybelsus are defective.

465.    At all times mentioned herein, Defendants breached that duty to Plaintiffs when they produced, manufactured, sold, distributed, and marketed the Ozempic and Rybelsus.

466.    Ozempic and Rybelsus were expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

467.    At all relevant times, and at the times Ozempic and Rybelsus left Defendants' control, Defendants knew or should have known that Ozempic and Rybelsus were unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

468.    At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic and Rybelsus.

469.    At all relevant times, Plaintiffs were using Ozempic and Rybelsus for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

470.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

471.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

472.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

473.    Illinois imposes a duty on producer, manufacturers, distributors, lessors, and sellers of a product to exercise all reasonable care when producing, manufacturing, distributing, leasing, and selling their products.

474.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic and Rybelsus that was used by Plaintiffs.

475.    Ozempic and Rybelsus was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

476.    At all relevant times, and at the times Ozempic and Rybelsus left Defendants' control, Defendants knew or should have known that Ozempic and Rybelsus were unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

477.    Despite the fact that Defendants knew or should have known that Ozempic and Rybelsus caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic and Rybelsus to consumers, including Plaintiffs, without adequate warnings.

478.    Despite the fact that Defendants knew or should have known that Ozempic and Rybelsus caused unreasonably dangerous injuries, Defendants continued to market Ozempic and Rybelsus to prescribing physicians, including Plaintiffs' prescribing physician(s), without adequate warnings.

479.    Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

480.    At all relevant times, given its increased safety risks, Ozempic and Rybelsus were not fit for the ordinary purpose for which it was intended.

481.    At all relevant times, given its increased safety risks, Ozempic and Rybelsus did not meet the reasonable expectations of ordinary consumers, particularly Plaintiffs.

482.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic and Rybelsus into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

483.    At all relevant times, Plaintiffs were using Ozempic and Rybelsus for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

484.    The Ozempic and Rybelsus designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal

injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

485.    The Ozempic and Rybelsus designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic and Rybelsus, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic and Rybelsus.

486.    The labels for Ozempic and Rybelsus were inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Rybelsus.

487.    The labels for Ozempic and Rybelsus were inadequate because they did not warn and/or adequately warn that Ozempic and Rybelsus had not been sufficiently and/or adequately tested for safety risks.

488.    The labels for Ozempic and Rybelsus were inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic and Rybelsus.

489.    The labels for Ozempic and Rybelsus were inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

490.    Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Rybelsus.

491.    Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic and Rybelsus had not been sufficiently and/or adequately tested for safety risks.

492.    Plaintiffs had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiffs' reliance upon Defendants' warnings was reasonable.

493.    Plaintiffs' prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

494.    Had Plaintiffs' prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic and Rybelsus, then the prescribing physician would not have prescribed Ozempic and Rybelsus and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic and Rybelsus so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic and Rybelsus.

495.    Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and Rybelsus and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Rybelsus,

so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic and Rybelsus.

496.    If Plaintiffs had been warned of the increased risk of severe injuries, which are causally associated with Ozempic and Rybelsus, then Plaintiffs would not have used Ozempic and Rybelsus and/or suffered from injuries.

497.    If Plaintiffs had been warned that Ozempic and Rybelsus had not been sufficiently and/or adequately tested for safety risks, then Plaintiffs would not have used Ozempic and Rybelsus and/or suffered injuries.

498.    If Plaintiffs had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic and Rybelsus, then Plaintiffs would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic and Rybelsus.

499.    If Plaintiffs had informed Plaintiffs' prescribing physician(s) that Plaintiffs did not want to take Ozempic and Rybelsus due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiffs' prescribing physician(s) would not have prescribed Ozempic and Rybelsus.

500.    By reason of the foregoing, Defendants have become liable to Plaintiffs for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic and Rybelsus.

501.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiffs in particular, and Defendants are therefore liable for the injuries sustained by Plaintiffs.

502.    Defendants' inadequate warnings for Ozempic and Rybelsus were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

503.    Said inadequate warnings for Defendants' drugs Ozempic and Rybelsus were a substantial factor in causing Plaintiffs' injuries.

504.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

505.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

506.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

507.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or acquired the Defendants who designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic and Rybelsus that was used by Plaintiffs.

508.    At all relevant times, Defendants expressly warranted to Plaintiffs and Plaintiffs' prescribing physician(s) that Ozempic and Rybelsus was safe to improve glycemic control in

adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

509.    The aforementioned express warranties were made to Plaintiffs and Plaintiffs' prescribing physician(s) by way of Ozempic and Rybelsus' label, website, advertisements, promotional materials, and through other statements.

510.    Plaintiffs' injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

511.    Plaintiffs' injuries and damages arose from a reasonably anticipated use of the products by Plaintiffs.

512.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiffs.

513.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

514.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

## FOURHT CAUSE OF ACTION
### Manufacturing Defect

515.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this

Complaint contained in each of the foregoing paragraphs inclusive, with the same force and

effect as if more fully set forth herein.

516.    At all relevant times, Ozempic and Rybelsus contained a manufacturing defect

which made it unreasonably dangerous.

517.    Ozempic and Rybelsus were expected to and did reach the usual consumers,

handlers, and person coming into contact with said product without substantial change in the

condition in which it was produced, manufactured, sold, distributed, and marketed by

Defendants.

518.    At all relevant times, and at the times Ozempic and Rybelsus left Defendants'

control, Defendants knew or should have known that Ozempic and Rybelsus were

unreasonably dangerous because they did not adequately warn of the risk of severe injuries,

especially when used in the form and manner as provided by Defendants.

519.    At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic

and Rybelsus.

520.    At all relevant times, Plaintiffs were using Ozempic and Rybelsus for the

purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to

improve glycemic control in adults with Type 2 diabetes mellitus.

521.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were

caused to suffer serious and dangerous injuries, which resulted in other severe and personal

injuries which are permanent and lasting in nature, including physical pain, mental anguish,

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

522.     As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

**FIFTH CAUSE OF ACTION**
**Consumer Fraud-Unfair or Deceptive Practice under State Law**

523.     Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

524.     Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiffs used Ozempic and Rybelsus.

525.     Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

526.     Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

527.     Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiffs in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic and Rybelsus.

528.     Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic and Rybelsus but continued to misrepresent material facts and remained silent about the truth.

529.     The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiffs, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

530.     Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

531.     Defendants' practice of promoting and marketing Ozempic and Rybelsus created and reinforced a false impression as to the safety of Ozempic and Rybelsus, thereby placing consumers at risk of serious and dangerous effects.

532.     Ozempic and Rybelsus lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

533.     Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic and Rybelsus as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

534.     As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish,

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

535.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER INDIANA LAW

### FIRST CAUSE OF ACTION
**Negligence**

536.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

537.    Indiana imposes a duty on the manufacturer of a product to conduct a standard of care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

538.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiffs.

539.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

540.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

541.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care, as Plaintiffs were reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

542.    At all times mentioned herein, Defendants breached that duty to Plaintiffs when they produced, manufactured, sold, distributed, and marketed the Ozempic.

543.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

544.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

545.    At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

546.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

547.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish,

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

548.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

### SECOND CAUSE OF ACTION
### Failure to Warn

549.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

550.    Indiana imposes liability on a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any use or consumer, and results in physical harm caused by a product to the user or consumer.

551.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiffs.

552.    Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

553.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

554.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiffs, without adequate warnings.

555.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiffs' prescribing physician(s), without adequate warnings.

556.    Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

557.    At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

558.    At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiffs.

559.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

560.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

561.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of

serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

562.     The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

563.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

564.     The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

565.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

566.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

567.     Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

568.     Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

569.     Plaintiffs had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiffs' reliance upon Defendants' warnings was reasonable.

570.     Plaintiffs' prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

571.     Had Plaintiffs' prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

572.     Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

573.    If Plaintiffs had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiffs would not have used Ozempic and/or suffered from injuries.

574.    If Plaintiffs had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiffs would not have used Ozempic and/or suffered injuries.

575.    If Plaintiffs had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiffs would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

576.    If Plaintiffs had informed Plaintiffs' prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiffs' prescribing physician(s) would not have prescribed Ozempic.

577.    By reason of the foregoing, Defendants have become liable to Plaintiffs for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

578.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiffs in particular, and Defendants are therefore liable for the injuries sustained by Plaintiffs.

579.    Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

580.    Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiffs' injuries.

581.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

582.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

583.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

584.    At all relevant times, Defendants expressly warranted to Plaintiffs and Plaintiffs' prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

585.    The aforementioned express warranties were made to Plaintiffs and Plaintiffs' prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

586.    Plaintiffs' injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

587.     Plaintiffs' injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

588.     Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiffs.

589.     As a direct or proximate result of the foregoing acts and omissions, Plaintiffs was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

590.     As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
### Manufacturing Defect

591.     Plaintiffs repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

592.     Indiana imposes liability on a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer, where the product causes physical harm to the user or consumer.

593.     At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

594. Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

595. At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

596. At all relevant times, Plaintiffs were a foreseeable user or consumer of Ozempic.

597. At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

598. As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

599. As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

**FIFTH CAUSE OF ACTION**
**Consumer Fraud-Unfair or Deceptive Practice under State Law**

600.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

601.    Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiffs used Ozempic.

602.    Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

603.    Defendants, while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiffs and Plaintiffs' prescribing physician(s), of the same.

604.    Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiffs in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic.

605.    Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

606.    The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and

consumers such as Plaintiffs, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

607.    Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

608.    Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

609.    Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

610.    Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

611.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

612.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER KANSAS LAW

## FIRST CAUSE OF ACTION
**Negligence**

613.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

614.   Kansas imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

615.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiff.

616.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

617.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

618.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

619.   At all times mentioned herein, Defendants breached that duty to Plaintiff when they produced, manufactured, sold, distributed, and marketed the Ozempic.

620.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

621.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

622.    At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

623.    At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

624.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

625.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
**Failure to Warn**

626.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

627.    Kansas imposes liability on manufacturers and sellers to warn purchasers and consumers of the risks associated with a product and imposes that liability on the manufacturers or sellers' knowledge of the risk.

628.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

629.    Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

630.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

631.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

632.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

633.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

634.    At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

635.    At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiff.

636.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

637.    At all relevant times, Plaintiff were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

638.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

639.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health

consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

640.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

641.    The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

642.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

643.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

644.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

645.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

646.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

647.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

648.    Had Plaintiff's prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

649.    Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

650.    If Plaintiff had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from injuries.

651.    If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Ozempic and/or suffered injuries.

652.    If Plaintiff had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiff would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

653.    If Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic.

654.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

655.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

656.    Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

657.    Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiff's injuries.

658.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

659.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

660.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

661.    At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

662.    The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

663.    Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

664.    Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

665.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

666.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish,

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

667.    By reason of the foregoing, Plaintiff has been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Ozempic drug.

668.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
### Manufacturing Defect

669.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

670.    Kansas imposes liability when a defect or flaw is present in the product at the time it was sold and that the defective condition caused the claimed injury.

671.    At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

672.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

673.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because

they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

674.    At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

675.    At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

676.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

677.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
### Consumer Fraud-Unfair or Deceptive Practice under State Law

678.    Plaintiff repeats, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

679.    Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Ozempic.

680. Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

681. Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

682. Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiff in product packaging, labeling, advertising, promotional campaigns, and materials, among other ways, regarding the safety and use of Ozempic.

683. Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

684. The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

685. Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

686. Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

687.    Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

688.    Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

689.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

690.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER MASSACHUSETTS LAW

### FIRST CAUSE OF ACTION
**Negligence**

691.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

692.    Massachusetts imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

693. At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiff.

694. At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

695. At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

696. At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

697. At all times mentioned herein, Defendants breached that duty to Plaintiff when they produced, manufactured, sold, distributed, and marketed the Ozempic.

698. Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

699. At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

700. At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

701.     At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

702.     As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

703.     As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

704.     Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

705.     At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

706.     Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

707.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

708.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

709.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

710.   Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

711.   At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

712.   At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiff.

713.   Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

714.    At all relevant times, Plaintiff were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

715.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

716.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

717.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

718.    The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

719.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

720.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

721.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

722.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

723.   Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

724.   Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

725.   Had Plaintiff's prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

726.    Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

727.    If Plaintiff had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from injuries.

728.    If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Ozempic and/or suffered injuries.

729.    If Plaintiff had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiff would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

730.    If Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic.

731.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

732.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the

health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

733.  Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

734.  Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiff's injuries.

735.  As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

736.  As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## THIRD CAUSE OF ACTION
### Breach of Express Warranty

737.  Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

738.  At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

739.    The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

740.    Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

741.    Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

742.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

743.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

744.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
### Manufacturing Defect

745.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

746.    At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

747.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

748.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

749.    At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

750.    At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

751.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

752.     As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**FIFTH CAUSE OF ACTION**
**Consumer Fraud-Unfair or Deceptive Practice under State Law**

753.     Plaintiff repeats, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

754.     Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Ozempic.

755.     Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

756.     Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

757.     Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiff in product packaging, labeling, advertising, promotional campaigns, and materials, among other ways, regarding the safety and use of Ozempic.

758.     Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

759. The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

760. Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

761. Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

762. Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

763. Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

764. As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

765. As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and

services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER MICHIGAN LAW

### FIRST CAUSE OF ACTION
**Negligence**

766.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

767.    Michigan imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

768.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiff.

769.    At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

770.    At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

771.    At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

772.    At all times mentioned herein, Defendants breached that duty to Plaintiff when they produced, manufactured, sold, distributed, and marketed the Ozempic.

773.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

774.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

775.    At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

776.    At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

777.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

778.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

779.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

780.    Under Michigan law, a product that is defective due to a failure to warn imposes liability on the manufacturer if the manufacturer had actual or constructive knowledge of the danger, had no reason to believe that consumers would know of this danger, and failed to exercise reasonable care to inform consumers of the danger.

781.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

782.    Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

783.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

784.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

785.     Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

786.     Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

787.     At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

788.     At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiff.

789.     Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

790.     At all relevant times, Plaintiff were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

791.     The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

792.     The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

793.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

794.     The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

795.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

796.     The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

797.     Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

798.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

799.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

800.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

801.    Had Plaintiff's prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

802.    Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

803.    If Plaintiff had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from injuries.

804.    If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Ozempic and/or suffered injuries.

805.    If Plaintiff had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiff would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

806.    If Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic.

807.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

808.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

809.    Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

810.    Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiff's injuries.

811.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal

injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

812.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

813.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

814.    At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

815.    The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

816.    Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

817.    Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

818.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

819.    As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

820.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
### Manufacturing Defect

821.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

822.    At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

823.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

824.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

825.      At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

826.      At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

827.      As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

828.      As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
### Consumer Fraud-Unfair or Deceptive Practice under State Law

829.    Plaintiff repeats, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

830.    Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Ozempic.

831.     Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

832.     Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

833.     Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiff in product packaging, labeling, advertising, promotional campaigns, and materials, among other ways, regarding the safety and use of Ozempic.

834.     Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

835.     The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

836.     Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

837.     Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

838.     Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

839.     Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

840.     As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

841.     As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER MISSISSIPPI LAW

### FIRST CAUSE OF ACTION
**Negligence**

842.     Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

843.     Mississippi imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

844.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiffs.

845.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

846.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

847.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care, as Plaintiffs were reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

848.    At all times mentioned herein, Defendants breached that duty to Plaintiffs when they produced, manufactured, sold, distributed, and marketed the Ozempic.

849.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

850.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

851.    At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

852.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

853.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

854.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

855.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

856.    Mississippi imposes liability on manufacturers when a product is unreasonable dangerous because it failed to contain adequate warning to the professional prescribing the product of a danger that cause the damage, which the manufacturer knew or should have known of.

857.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiffs.

858.    Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

859.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

860.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiffs, without adequate warnings.

861.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiffs' prescribing physician(s), without adequate warnings.

862.    Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

863.    At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

864.    At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiffs.

865.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or

distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

866.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

867.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

868.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

869.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

870.    The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

871.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

872.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

873.    Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

874.    Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

875.    Plaintiffs had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiffs' reliance upon Defendants' warnings was reasonable.

876.    Plaintiffs' prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

877.    Had Plaintiffs' prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

878.   Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

879.   If Plaintiffs had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from injuries.

880.   If Plaintiffs had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Ozempic and/or suffered injuries.

881.   If Plaintiffs had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiffs would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

882.   If Plaintiffs had informed Plaintiffs' prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiffs' prescribing physician(s) would not have prescribed Ozempic.

883.   By reason of the foregoing, Defendants have become liable to Plaintiffs for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

884.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the

health of consumers and to Plaintiffs in particular, and Defendants are therefore liable for the injuries sustained by Plaintiffs.

885.    Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

886.    Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiffs' injuries.

887.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

888.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**

889.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

890.    At all relevant times, Defendants expressly warranted to Plaintiffs and Plaintiffs' prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

891.    The aforementioned express warranties were made to Plaintiffs and Plaintiffs' prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

892.    Plaintiffs' injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

893.    Plaintiffs' injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

894.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiffs.

895.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

896.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
### Manufacturing Defect

897.  Plaintiffs repeat, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

898.  Mississippi imposes liability on a manufacturer that manufactures a product that deviates in a material way from the manufacturers or designer's specifications or from otherwise identical units manufactured.

899.  At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

900.  Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

901.  At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

902.  At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

903.  At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

904.  As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish,

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

905.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

**FIFTH CAUSE OF ACTION**
**Consumer Fraud-Unfair or Deceptive Practice under State Law**

906.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

907.    Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiffs used Ozempic.

908.    Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

909.    Defendants, while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiffs and Plaintiffs' prescribing physician(s), of the same.

910.    Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiffs in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic.

911.    Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

912.    The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiffs, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

913.    Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

914.    Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

915.    Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

916.    Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

917.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

918.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER NORTH CAROLINA LAW

### FIRST CAUSE OF ACTION
**Negligence**

919.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

920.    North Carolina imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

921.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiffs.

922.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

923.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

924.    At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care, as Plaintiffs were reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

925.    At all times mentioned herein, Defendants breached that duty to Plaintiffs when they produced, manufactured, sold, distributed, and marketed the Ozempic.

926.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

927.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

928.    At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

929.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

930.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

931.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and

services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

932.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

933.   North Carolina imposes a duty on manufacturers and sellers to provide an adequate warning to purchasers and consumers of a product that is unreasonably dangerous.

934.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiffs.

935.   Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

936.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

937.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiffs, without adequate warnings.

938.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiffs' prescribing physician(s), without adequate warnings.

939.    Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

940.    At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

941.    At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiffs.

942.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

943.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

944.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

945.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

946.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

947.    The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

948.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

949.    The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

950.    Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

951.    Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

952.    Plaintiffs had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiffs' reliance upon Defendants' warnings was reasonable.

953.    Plaintiffs' prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

954.    Had Plaintiffs' prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

955.    Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

956.    If Plaintiffs had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiffs would not have used Ozempic and/or suffered from injuries.

957.    If Plaintiffs had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiffs would not have used Ozempic and/or suffered injuries.

958.    If Plaintiffs had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiffs would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

959.    If Plaintiff had informed Plaintiffs' prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiffs' prescribing physician(s) would not have prescribed Ozempic.

960.    By reason of the foregoing, Defendants have become liable to Plaintiffs for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

961.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiffs in particular, and Defendants are therefore liable for the injuries sustained by Plaintiffs.

962.    Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

963.    Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiffs' injuries.

964.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal

injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

965.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

966.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

967.    At all relevant times, Defendants expressly warranted to Plaintiffs and Plaintiffs' prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

968.    The aforementioned express warranties were made to Plaintiffs and Plaintiffs' prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

969.    Plaintiffs' injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

970.    Plaintiffs' injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

971.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiffs.

972.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

973.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

### FOURTH CAUSE OF ACTION
**Manufacturing Defect**

974.    Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

975.    At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

976.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

977.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

978.    At all relevant times, Plaintiffs were foreseeable user or consumer of Ozempic.

979.     At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

980.     As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

981.     As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
### Consumer Fraud-Unfair or Deceptive Practice under State Law

982.     Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

983.     Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Ozempic.

984.     Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

985.     Defendants, while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiffs and Plaintiffs' prescribing physician(s), of the same.

986.     Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiffs in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic.

987.     Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

988.     The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiffs, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

989.     Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

990.     Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

991.     Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

992.     Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

993.     As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

994.     As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER NEW MEXICO LAW

### FIRST CAUSE OF ACTION
**Negligence**

995.     Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

996.     New Mexico imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

997.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiff.

998.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

999.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

1000.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

1001.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1002.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1003.   At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

1004.   At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1005.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1006.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

1007.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1008.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

1009.   Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1010.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1011.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

1012.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

1013.   Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

1014.   At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

1015.   At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiff.

1016.   Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

1017.   At all relevant times, Plaintiff were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

1018.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of

serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

1019.  The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

1020.  The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1021.  The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1022.  The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

1023.  The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

1024.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1025.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1026.   Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

1027.   Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

1028.   Had Plaintiff's prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

1029.   Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

1030.   If Plaintiff had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from injuries.

1031.   If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Ozempic and/or suffered injuries.

1032.   If Plaintiff had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Ozempic.

1033.   If Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic.

1034.   By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

1035.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

1036.   Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

1037.   Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiff's injuries.

1038.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1039.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

1040.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1041.   At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

1042.   The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

1043.   Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

1044.   Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

1045.   Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

1046.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1047.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**FOURTH CAUSE OF ACTION**
**Manufacturing Defect**

1048.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1049.   At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

1050.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1051.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

1052.   At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

1053.   At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1054.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1055.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
### Consumer Fraud-Unfair or Deceptive Practice under State Law

1056.   Plaintiff repeats, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1057.   Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Ozempic.

1058.   Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

1059.   Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

1060.   Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiff in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic.

1061.   Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

1062.   The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

1063.   Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

1064.   Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

1065.   Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

1066.   Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

1067.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1068.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER OKLAHOMA LAW

### FIRST CAUSE OF ACTION
**Negligence**

1069.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1070.   Oklahoma imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

1071.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiff.

1072.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

1073.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

1074.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

1075.   At all times mentioned herein, Defendants breached that duty to Plaintiffs when they produced, manufactured, sold, distributed, and marketed the Ozempic.

1076.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1077.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1078.   At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

1079.   At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1080.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1081.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

1082.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1083.   Oklahoma imposes a duty on manufacturers and sellers to warn purchasers and consumers of potential dangers that may occur from the use of the product when it is known or should be known that hazards exist.

1084.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

1085.   Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1086.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1087.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

1088.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

1089.   Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

1090.   At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

1091.   At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiff.

1092.   Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or

distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

1093.   At all relevant times, Plaintiff were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

1094.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

1095.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

1096.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1097.   The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1098.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

1099.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

1100.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1101.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1102.   Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

1103.   Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

1104.   Had Plaintiff's prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

1105.   Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

1106.   If Plaintiff had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from injuries.

1107.   If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Ozempic and/or suffered injuries.

1108.   If Plaintiff had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiff would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

1109.   If Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic.

1110.   By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

1111.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the

health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

1112.   Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

1113.   Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiff's injuries.

1114.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1115.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

1116.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1117.   At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

1118.   The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

1119.   Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

1120.   Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

1121.   Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

1122.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1123.   By reason of the foregoing, Plaintiff has been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Ozempic.

1124.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FOUTH CAUSE OF ACTION
### Manufacturing Defect

1125.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1126.   Oklahoma imposes liability on a manufacturer when an article he places on the market, knowing it to be used without inspection for defects, proves to have a defect which causes injury to a human being.

1127.   At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

1128.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1129.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

1130.   At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

1131.   At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1132.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish,

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1133.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
### Consumer Fraud-Unfair or Deceptive Practice under State Law

1134.   Plaintiff repeats, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1135.   Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Ozempic.

1136.   Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

1137.   Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

1138.   Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiff in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic.

1139.   Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

1140.   The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

1141.   Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

1142.   Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

1143.   Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

1144.   Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

1145.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1146.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER PENNSYLVANIA LAW

### FIRST CAUSE OF ACTION
**Negligence**

1147.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1148.   Pennsylvania imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

1149.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiff.

1150.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

1151.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

1152.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

1153.   At all times mentioned herein, Defendants breached that duty to Plaintiffs when they produced, manufactured, sold, distributed, and marketed the Ozempic.

1154.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1155.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1156.   At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

1157.   At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1158.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1159.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and

services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

<u>**SECOND CAUSE OF ACTION**</u>
**Failure to Warn**

1160.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1161.   Pennsylvania imposes liability on manufacturers who sell a product that was in a defective condition unreasonably dangerous to the user and the defect caused the user or consumer's injuries.

1162.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

1163.   Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1164.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1165.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

1166.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

1167.   Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

1168.   At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

1169.   At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiff.

1170.   Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

1171.   At all relevant times, Plaintiff were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

1172.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

1173.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

1174.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1175.   The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1176.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

1177.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

1178.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1179.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1180.   Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

1181.   Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

1182.   Had Plaintiff's prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiffs' use of Ozempic.

1183.   Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

1184.   If Plaintiff had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from injuries.

1185.   If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Ozempic and/or suffered injuries.

1186.   If Plaintiff had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Ozempic.

1187.   If Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic.

1188.   By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

1189.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

1190.   Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

1191.   Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiff's injuries.

1192.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal

injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1193.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff ais informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
### Breach of Express Warranty

1194.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1195.   At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

1196.   The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

1197.   Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

1198.   Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiffs.

1199.   Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

1200.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1201.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FOUTH CAUSE OF ACTION
### Manufacturing Defect

1202.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1203.   Pennsylvania imposes liability on a manufacturer that manufactures a defective product, with a defect that existed when it left the hands of the manufacturer, and the defect caused the harm.

1204.   At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

1205.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1206.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because

they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

1207.   At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

1208.   At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1209.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1210.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
### Consumer Fraud-Unfair or Deceptive Practice under State Law

1211.   Plaintiff repeats, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1212.   Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Ozempic.

1213.   Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

1214.   Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

1215.   Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiff in product packaging, labeling, advertising, promotional campaigns, and materials, among other ways, regarding the safety and use of Ozempic.

1216.   Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

1217.   The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

1218.   Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

1219.   Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

1220.   Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

1221.   Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

1222.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1223.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER SOUTH CAROLINA LAW

### FIRST CAUSE OF ACTION
**Negligence**

1224.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1225.   South Carolina imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

1226.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiffs.

1227.   At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

1228.   At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

1229.   At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care, as Plaintiffs were reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

1230.   At all times mentioned herein, Defendants breached that duty to Plaintiffs when they produced, manufactured, sold, distributed, and marketed the Ozempic.

1231.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1232.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1233.   At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

1234.   At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1235.   As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1236.   As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

1237.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1238.   South Carolina imposes liability on manufacturers and sellers to warn purchasers and consumers if they know or have reason to know a product is or is likely to be dangerous for its intended use, they have no reason to believe the user will realize the potential danger, and they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous.

1239. At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiffs.

1240. Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1241. At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1242. Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiffs, without adequate warnings.

1243. Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiffs' prescribing physician(s), without adequate warnings.

1244. Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

1245. At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

1246. At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiffs.

1247.  Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

1248.  At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

1249.  The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

1250.  The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

1251.  The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1252.   The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1253.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

1254.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

1255.   Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1256.   Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1257.   Plaintiffs had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

1258.   Plaintiffs' prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

1259.   Had Plaintiffs' prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing

physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

1260.   Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

1261.   If Plaintiffs had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiffs would not have used Ozempic and/or suffered from injuries.

1262.   If Plaintiffs had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiffs would not have used Ozempic and/or suffered injuries.

1263.   If Plaintiffs had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiffs would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

1264.   If Plaintiffs had informed Plaintiffs' prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiffs' prescribing physician(s) would not have prescribed Ozempic.

1265.   By reason of the foregoing, Defendants have become liable to Plaintiffs for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

1266.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiffs in particular, and Defendants are therefore liable for the injuries sustained by Plaintiffs.

1267.   Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

1268.   Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiffs' injuries.

1269.   As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1270.   As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

## THIRD CAUSE OF ACTION
**Breach of Express Warranty**

1271.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this
Complaint contained in each of the foregoing paragraphs inclusive, with the same force and
effect as if more fully set forth herein.

1272.   At all relevant times, Defendants expressly warranted to Plaintiffs and Plaintiffs'
prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with
type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

1273.   The aforementioned express warranties were made to Plaintiffs and Plaintiffs'
prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional
materials, and through other statements.

1274.   Plaintiffs' injuries and damages were directly caused by Defendants' breach of the
aforementioned express warranties.

1275.   Plaintiffs' injuries and damages arose from a reasonably anticipated use of the
products by Plaintiff.

1276.   Accordingly, Defendants are liable as a result of their breach of express
warranties to Plaintiffs.

1277.   As a direct or proximate result of the foregoing acts and omissions, Plaintiffs was
caused to suffer serious and dangerous injuries, which resulted in other severe and personal
injuries which are permanent and lasting in nature, including physical pain, mental anguish,
diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring
and/or medications, and fear of developing any of the above-named health consequences.

1278.   By reason of the foregoing, Plaintiffs have been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to Plaintiffs' use of Ozempic.

1279.   As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
### Manufacturing Defect

1280.   Plaintiffs repeat, reiterate, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1281.   At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

1282.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1283.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

1284.   At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

1285.   At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1286.   As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1287.   As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
### Consumer Fraud-Unfair or Deceptive Practice under State Law

1288.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1289.   Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiffs used Ozempic.

1290.   Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

1291.   Defendants, while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiffs and Plaintiffs' prescribing physician(s), of the same.

1292.   Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiffs in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic.

1293.   Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

1294.   The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiffs, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

1295.   Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

1296.   Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

1297.   Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

1298.   Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

1299.   As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1300.   As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER TEXAS LAW

### FIRST CAUSE OF ACTION
**Negligence**

1301.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1302.   Texas imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

1303.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiffs.

1304.   At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

1305.   At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

1306.   At all times mentioned herein, Defendants had a duty to Plaintiffs to exercise reasonable care, as Plaintiffs were reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

1307.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1308.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1309.   At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

1310.   At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1311.   As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1312.   As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

**SECOND CAUSE OF ACTION**
**Failure to Warn**

1313.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1314.   Texas imposes liability on manufacturers when a product's warning is defective, and the failure to warn causes of injury to a user or consumer.

1315.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiffs.

1316.   Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1317.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because

they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1318.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiffs, without adequate warnings.

1319.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiffs' prescribing physician(s), without adequate warnings.

1320.   Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

1321.   At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

1322.   At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiffs.

1323.   Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

1324.   At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

1325.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

1326.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

1327.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1328.   The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1329.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

1330.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

1331.   Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1332.   Communications made by Defendants to Plaintiffs and Plaintiffs' prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1333.   Plaintiffs had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiffs' reliance upon Defendants' warnings was reasonable.

1334.   Plaintiffs' prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

1335.   Had Plaintiffs' prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

1336.   Had Plaintiffs' prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings

regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

1337.   If Plaintiffs had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiffs would not have used Ozempic and/or suffered from injuries.

1338.   If Plaintiffs had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiffs would not have used Ozempic and/or suffered injuries.

1339.   If Plaintiffs had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiffs would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Ozempic.

1340.   If Plaintiffs had informed Plaintiffs' prescribing physician(s) that Plaintiffs did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiffs' prescribing physician(s) would not have prescribed Ozempic.

1341.   By reason of the foregoing, Defendants have become liable to Plaintiffs for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

1342.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiffs in particular, and Defendants are therefore liable for the injuries sustained by Plaintiffs.

1343.   Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

1344.   Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiffs' injuries.

1345.   As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1346.   As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

## THIRD CAUSE OF ACTION
### Breach of Express Warranty

1347.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1348.   At all relevant times, Defendants expressly warranted to Plaintiffs and Plaintiffs' prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

1349.   The aforementioned express warranties were made to Plaintiffs and Plaintiffs' prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

1350.   Plaintiffs' injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

1351.   Plaintiffs' injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

1352.   Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiffs.

1353.   As a direct or proximate result of the foregoing acts and omissions, Plaintiffs was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1354.   As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
### Manufacturing Defect

1355.   Plaintiffs repeat, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1356.   Texas imposes liability on manufacturers when a finished product deviates, in terms of construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous.

1357.    At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

1358.    Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1359.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

1360.    At all relevant times, Plaintiffs were foreseeable users or consumers of Ozempic.

1361.    At all relevant times, Plaintiffs were using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1362.    As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1363.    As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health

care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
### Consumer Fraud-Unfair or Deceptive Practice under State Law

1364.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1365.   Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiffs used Ozempic.

1366.   Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

1367.   Defendants, while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiffs and Plaintiffs' prescribing physician(s), of the same.

1368.   Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiffs in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic.

1369.   Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

1370.   The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression,

or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiffs, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

1371.   Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

1372.   Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

1373.   Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

1374.   Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

1375.   As a direct or proximate result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1376.   As a result of the foregoing acts and omissions Plaintiffs did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiffs are informed and believe and further allege that Plaintiffs will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER WISCONSIN LAW

## FIRST CAUSE OF ACTION
**Negligence**

1377.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1378.   Wisconsin imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

1379.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Rybelsus that was used by Plaintiff.

1380.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Rybelsus.

1381.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the inspection of Rybelsus and to locate visible or hidden defects in the product that could lead to harm or injury.

1382.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Rybelsus' probable use and to be endangered in the event that Rybelsus is defective.

1383.   At all times mentioned herein, Defendants breached that duty to Plaintiff when they produced, manufactured, sold, distributed, and marketed the Rybelsus.

1384.   Rybelsus was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1385.   At all relevant times, and at the times Rybelsus left Defendants' control, Defendants knew or should have known that Rybelsus was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1386.   At all relevant times, Plaintiff was a foreseeable user or consumer of Rybelsus.

1387.   At all relevant times, Plaintiff was using Rybelsus for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1388.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1389.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### Failure to Warn

1390.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1391.   Wisconsin imposes liability on manufacturers when a product is defective based on a failure to adequately warn when an intended use of the product is dangerous, but the manufacturer did not provide sufficient warning or instruction.

1392.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Rybelsus that was used by Plaintiff.

1393.   Rybelsus was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1394.   At all relevant times, and at the times Rybelsus left Defendants' control, Defendants knew or should have known that Rybelsus was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1395.   Despite the fact that Defendants knew or should have known that Rybelsus caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Rybelsus to consumers, including Plaintiff, without adequate warnings.

1396.   Despite the fact that Defendants knew or should have known that Rybelsus caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

1397.   Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

1398.   At all relevant times, given its increased safety risks, Rybelsus was not fit for the ordinary purpose for which it was intended.

1399.   At all relevant times, given its increased safety risks, Rybelsus did not meet the reasonable expectations of ordinary consumers, particularly Plaintiff.

1400.   Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Rybelsus into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

1401.   At all relevant times, Plaintiff were using Rybelsus for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

1402.   The Rybelsus designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

1403.   The Rybelsus designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health

consequences from Rybelsus, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Rybelsus.

1404.   The label for Rybelsus was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Rybelsus.

1405.   The label for Rybelsus was inadequate because they did not warn and/or adequately warn that Rybelsus had not been sufficiently and/or adequately tested for safety risks.

1406.   The label for Rybelsus was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Rybelsus.

1407.   The label for Rybelsus was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

1408.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Rybelsus.

1409.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Rybelsus had not been sufficiently and/or adequately tested for safety risks.

1410.   Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

1411.   Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

1412.   Had Plaintiff's prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Rybelsus, then the prescribing physician would not have prescribed Rybelsus and/or would have provided Plaintiff with adequate warnings regarding the dangers of Rybelsus so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Rybelsus.

1413.   Had Plaintiff's prescribing physician(s) been warned that Rybelsus had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Rybelsus and/or would have provided Plaintiffs with adequate warnings regarding the lack of sufficient and/or adequate testing of Rybelsus, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Rybelsus.

1414.   If Plaintiff had been warned of the increased risk of severe injuries, which are causally associated with Rybelsus, then Plaintiff would not have used Rybelsus and/or suffered from injuries.

1415.   If Plaintiff had been warned that Rybelsus had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Rybelsus and/or suffered injuries.

1416. If Plaintiff had been warned of the increased risks of possible adverse side effects, which is causally associated with Rybelsus, then Plaintiff would have informed Plaintiffs' prescribers that Plaintiffs did not want to take Rybelsus.

1417. If Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Rybelsus due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Rybelsus.

1418. By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Rybelsus.

1419. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

1420. Defendants' inadequate warnings for Rybelsus were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

1421. Said inadequate warnings for Defendants' drugs Rybelsus was a substantial factor in causing Plaintiff's injuries.

1422. As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1423.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

1424.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1425.   At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Rybelsus was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

1426.   The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Rybelsus' label, website, advertisements, promotional materials, and through other statements.

1427.   Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

1428.   Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

1429.   Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

1430.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish,

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1431.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
### Manufacturing Defect

1432.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1433.   Wisconsin imposes liability on manufacturers when a product deviated from the manufacturer's specifications, and that deviation caused it to be unreasonably dangerous.

1434.   At all relevant times, Rybelsus contained a manufacturing defect which made it unreasonably dangerous.

1435.   Rybelsus was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1436.   At all relevant times, and at the times Rybelsus left Defendants' control, Defendants knew or should have known that Rybelsus was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

1437.   At all relevant times, Plaintiff was a foreseeable user or consumer of deviated from the manufacturer's specifications, and that deviation caused it to be unreasonably dangerous.

1438.   At all relevant times, Plaintiff was using deviated from the manufacturer's specifications, and that deviation caused it to be unreasonably dangerous for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1439.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1440.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
### Consumer Fraud-Unfair or Deceptive Practice under State Law

1441.   Plaintiff repeats, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1442.   Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Rybelsus.

1443.   Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing Rybelsus into the stream of commerce.

1444.   Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

1445.   Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiff in product packaging, labeling, advertising, promotional campaigns, and materials, among other ways, regarding the safety and use of Rybelsus.

1446.   Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Rybelsus but continued to misrepresent material facts and remained silent about the truth.

1447.   The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

1448.   Defendants concealed, omitted, or minimized the dangers of Rybelsus or provided misinformation about adverse reactions, risks, and potential harms from Rybelsus.

1449.   Defendants' practice of promoting and marketing Rybelsus created and reinforced a false impression as to the safety of Rybelsus, thereby placing consumers at risk of serious and dangerous effects.

1450.   Rybelsus lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

1451.   Defendants' actions in connection with manufacturing, distributing, and marketing of Rybelsus as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

1452.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1453.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## CLAIMS UNDER WEST VIRGINA LAW

### FIRST CAUSE OF ACTION
**Negligence**

1454.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1455.   West Virgina imposes a duty on the manufacturer of a product to exercise reasonable care in the design of a product to protect those who may be reasonably expected to be in the foreseeable area of the use of the product, from unreasonable risk of harm.

1456.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Ozempic that was used by Plaintiff.

1457.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the design, research, manufacture, testing, advertising, promotion, marketing, selling, and/or distributing of Ozempic.

1458.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care in the inspection of Ozempic and to locate visible or hidden defects in the product that could lead to harm or injury.

1459.   At all times mentioned herein, Defendants had a duty to Plaintiff to exercise reasonable care, as Plaintiff was reasonably expected to be in the vicinity of Ozempic's probable use and to be endangered in the event that Ozempic is defective.

1460.   At all times mentioned herein, Defendants breached that duty to Plaintiff when they produced, manufactured, sold, distributed, and marketed the Ozempic.

1461.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1462.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1463.   At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

1464.   At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1465.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1466.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**SECOND CAUSE OF ACTION**
**Failure to Warn**

1467.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1468.   West Virgina imposes liability on manufacturers and sellers to warn reasonably foreseeable users and consumers of the dangerous prosperities of a product.

1469.   At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

1470.   Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1471.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of serious and dangerous injuries, especially when used in the form and manner as provided by Defendants.

1472.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

1473.   Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

1474.   Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

1475.   At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

1476.   At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of ordinary consumers, particularly Plaintiff.

1477.   Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or

distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries.

1478.   At all relevant times, Plaintiff were using Ozempic for the purposes and in a manner normally intended--namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

1479.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that this product created a risk of serious and dangerous injuries, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

1480.   The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic.

1481.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1482.   The label for Ozempic was inadequate because they did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1483.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

1484.   The label for Ozempic was inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

1485.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic.

1486.   Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) was inadequate because Defendants failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks.

1487.   Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

1488.   Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

1489.   Had Plaintiff's prescribing physician(s) been warned of the increased risks of adverse side effects, which are causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiffs with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiffs to make an informed decision regarding Plaintiffs' use of Ozempic.

1490.   Had Plaintiff's prescribing physician(s) been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic, so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

1491.   If Plaintiff had been warned of the increased risk of severe injuries, which are causally associated with Ozempic, then Plaintiff would not have used Ozempic and/or suffered from injuries.

1492.   If Plaintiff had been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, then Plaintiff would not have used Ozempic and/or suffered injuries.

1493.   If Plaintiff had been warned of the increased risks of possible adverse side effects, which is causally associated with Ozempic, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Ozempic.

1494.   If Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic due to the risks of possible adverse side effects, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic.

1495.   By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic.

1496.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the

health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

1497.   Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

1498.   Said inadequate warnings for Defendants' drugs Ozempic was a substantial factor in causing Plaintiff's injuries.

1499.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1500.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

1501.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1502.   At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to improve glycemic control in adults with type 2 diabetes mellitus, reduce cardiovascular risk, and/or to promote weight loss.

1503.   The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's label, website, advertisements, promotional materials, and through other statements.

1504.   Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

1505.   Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

1506.   Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

1507.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1508.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiffs will require future medical and/or hospital care, attention, and services.

### FOURTH CAUSE OF ACTION
**Manufacturing Defect**

1509.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1510.   West Virgina imposes liability on a manufacturer when a product is defective in the sense that it is not reasonably safe for its intended use.

1511.   At all relevant times, Ozempic contained a manufacturing defect which made it unreasonably dangerous.

1512.   Ozempic was expected to and did reach the usual consumers, handlers, and person coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

1513.   At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of severe injuries, especially when used in the form and manner as provided by Defendants.

1514.   At all relevant times, Plaintiff was a foreseeable user or consumer of Ozempic.

1515.   At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

1516.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1517.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and

services. Plaintiff was informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**FIFTH CAUSE OF ACTION**
**Consumer Fraud-Unfair or Deceptive Practice under State Law**

1518.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

1519.   Defendants were at all times material hereto engaged in the conduct of trade and commerce throughout the United States and within the state which Plaintiff used Ozempic.

1520.   Defendants engaged in trade and commerce with respect to designing, manufacturing, testing, advertising, promoting, marketing, selling, and/or distributing of Ozempic into the stream of commerce.

1521.   Defendants while engaged in trade and commerce, knew or should have known that the use of Ozempic causes serious and dangerous injuries but failed to warn the public, including Plaintiff and Plaintiff's prescribing physician(s), of the same.

1522.   Defendants made untrue, deceptive, or misleading representations of material facts to and knowingly omitted and/or concealed material facts from Plaintiff in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Ozempic.

1523.   Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Ozempic but continued to misrepresent material facts and remained silent about the truth.

1524.   The aforesaid conduct constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression,

or omission of material facts with the intent that others, including prescribing physicians and consumers such as Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants.

1525.   Defendants concealed, omitted, or minimized the dangers of Ozempic or provided misinformation about adverse reactions, risks, and potential harms from Ozempic.

1526.   Defendants' practice of promoting and marketing Ozempic created and reinforced a false impression as to the safety of Ozempic, thereby placing consumers at risk of serious and dangerous effects.

1527.   Ozempic lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

1528.   Defendants' actions in connection with manufacturing, distributing, and marketing of Ozempic as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

1529.   As a direct or proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

1530.   As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.      Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

2.      Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants, who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

3.      Awarding Plaintiffs the costs of these proceedings; and

4.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury as to all issues.

Dated:      February 29, 2024              Respectfully submitted,

THE SIMON LAW FIRM, P.C.

/s/ *Anthony G. Simon*
Anthony G. Simon, IL #6209056
THE SIMON LAW FIRM, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63139
Tel: (314) 241-2929
Fax: (314) 241-2029
Email: asimon@simonlawpc.com

*ATTORNEY FOR PLAINTIFFS*